THE PHENIX INSURANCE COMPANY OF BROOKLYN V. JAMES P. WEEKS.

1. STATEMENT BY COUNSEL—*Jury—No Error.* A statement made by counsel for the plaintiff, in stating the plaintiff's case to the jury, considered, and *held*, that no material error was committed.

2. INSURANCE—*Loss—Waiver—Suit, Not Prematurely Begun.* Where a fire-insurance policy was issued by an insurance company, and afterward the insured property was destroyed by fire, and the company then denied all liability on the ground that the policy was void, *held*, that by this denial the company in effect waived all its rights under certain stipulations in the policy requiring proofs of loss to be made, and giving the company sixty days thereafter within which to pay the loss; and a suit brought on the policy within less than the sixty days is not prematurely brought.

3. AGENT *Fills Application—Loss—Defense, Not Good.* Where a local agent of a fire insurance company furnishes a blank application to a party seeking insurance, and the agent himself, who has full and complete knowledge of all the facts, fills up the blanks and informs the applicant that the same is done correctly, and the applicant believes him and signs the application, and afterward a policy is issued thereon, and afterward a fire occurs destroying all the insured property, *held*, that the company cannot then claim that the insurance policy is void because of inaccurate or incomplete statements in the application.

4. INTEREST—*Prayer—Date.* Where the prayer of a petition asks for interest from a certain date, the plaintiff cannot recover interest from a prior date.

*Error from Edwards District Court.*

THIS was an action brought in the district court of Edwards county on February 5, 1887, by *James P. Weeks* against *The Phenix Insurance Company* of Brooklyn, New York, upon a fire-insurance policy issued by the defendant to the plaintiff on December 24, 1885, to recover for an alleged loss by fire of the insured property. The case was tried before the court and a jury on November 4, 1887, and the jury rendered the following verdict, and in answer to the following interrogatories, made the following special findings of fact, to wit:

"VERDICT.

"We, the jury impaneled and sworn in the above-entitled cause, do upon our oaths find for the plaintiff, and assess his damages at $2,660.42."

"FINDINGS OF FACT.

"Q. 1. Is it not a fact that L. W. Higgins was local agent of the defendant at Kinsley, Kansas, at the time the policy sued on was issued? A. Yes.

"Q. 2. Is it not a fact that L. W. Higgins, as local agent of defendant at Kinsley, wrote the answers in the application for such policy, which plaintiff signed? A. Yes.

"Q. 3. Is it not a fact that L. W. Higgins, as such agent, at the time of the making of the application and issuing of the policy, had full knowledge of the fact that a part of the machinery in the building was for the purpose of grinding feed? A. Yes.

"Q. 4. If the jury answer the last question in the affirmative, they may state if it is not a fact that L. W. Higgins, as such agent, knew at the time he issued the policy sued on that the plaintiff intended to grind feed with the rollers in elevator A. A. Yes.

"Q. 5. Is it not a fact that the plaintiff informed L. W. Higgins fully and truthfully of all the facts in relation to there being a watchman at the mill prior to the writing down of the answers in the application concerning a watch and watchman? A. Yes.

"Q. 6. Is it not a fact that L. W. Higgins, as such local

agent, with a full knowledge of all the facts as stated to him by plaintiff, in relation to watch and watchman, informed plaintiff that the answers which he (Higgins) wrote down to the questions in the application concerning a watch and watchman, were the proper answers to be made? A. Yes.

"Q. 7. Is it not a fact that when L. W. Higgins issued to plaintiff the policy sued on in this action, that he, as such agent, had full, complete and exact knowledge of all the facts and circumstances connected with the question as to whether there was any watchman kept at the elevator or not? A. Yes.

"Q. 8. Did the plaintiff make any false representations to L. W. Higgins concerning the risk, prior to the issuance of the policy? A. The plaintiff read and signed the application attached to the answer, but prior to reading and signing it, he stated to the agent fully and truthfully all the facts and circumstances involved in any answer contained in said application, and the agent then wrote the answers which appear in said application.

"Q. 9. [Erased.]

"Q. 10. Is it not a fact that the defendant company, prior to the expiration of thirty days from the date of the fire, notified plaintiff that it would not pay him for any loss under the policy sued on? A. Yes."

Upon this verdict and these findings the court below, on November 5, 1887, rendered judgment in favor of the plaintiff and against the defendant for the sum of $2,660.42, and costs of suit. The defendant company brings the case to this court for review.

*H. M. Jackson*, for plaintiff in error.

*C. N. Sterry*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: I. The first claim of error made by the plaintiff in error is with reference to the original statement of the case of the plaintiff below, made by his counsel after the jury had been impaneled and prior to the introduction of any evidence. Section 275 of the civil code provides, among other things, as follows:

"SEC. 275. When the jury has been sworn, the trial shall

proceed in the following order, unless the court for special reasons otherwise directs:

"1st. The party on whom rests the burden of the issues may briefly state his case, and the evidence by which he expects to sustain it."

Counsel for plaintiff below, in his said statement, used the following among other language:

"That, as I was stating to you, the reason that we make this proof to you is to show to you that an insurance company cannot issue a policy, take a man's money, and give him something in return which is absolutely worthless the moment it is issued — not worth the paper it is printed on."

Possibly a portion of this statement borders too closely upon an argument to come strictly within the provisions of the foregoing section of the civil code, but certainly no material error was committed. The insurance company did take the man's money and did issue to him an insurance policy, and when the fire occurred it then claimed that the policy *was and had always been absolutely worthless and void.*

II. It is claimed that the action was commenced prematurely. By the terms of the policy sued on, the loss was to be paid "sixty days after the proofs of the same required by the company shall have been made by the assured and received at the office in Chicago." The fire occurred December 4, 1886. Proofs of the loss were not made for more than thirty days afterward, and this action was commenced on February 5, 1887, within less than thirty days after the proofs of the loss. Now, if the company had admitted its liability for the loss, or for any possible portion thereof, or probably, if it had not denied its liability wholly and absolutely, its claim in this respect would be good; but after the fire occurred, it then, and persistently afterward, denied its liability utterly and absolutely, and denied it upon the ground that the policy itself was utterly null and void and absolutely worthless. As before stated, the fire occurred December 4, 1886, destroying substantially all the insured property, which was worth vastly more than the amount of the insurance; and

the company immediately had notice thereof.   The local agent
of the company, L. W. Higgins, had notice as soon as the fire
occurred.   The general agent at Chicago, Thomas B. Burch,
and the adjuster, M. M. Hamlin, had notice very soon after-
ward.   Hamlin visited the locality where the fire occurred, on
December 15, 1886, and made some inspection and examina-
tion with reference thereto.   On December 24, 1886, both
Hamlin and Burch wrote letters to Higgins denying the lia-
bility of the company, and in effect stating that the company
would not pay anything on account of the loss.   Hamlin's
letter reads as follows:

"Phenix Insurance Company.
M. M. Hamlin, *Adjuster*, Omaha, Neb.
"Omaha, Neb., December 24, 1886.
"*L. W. Higgins, Esq., Kinsley, Kas.:*

"Dear Sir—I am just in receipt of a letter from our
Chicago office, same being in reply to my letter written from
Kinsley, and, if Mr. Weeks thinks now there is any boy's
play about this matter, you can say to him, we deny liability.
Our Chicago office is firm, decided and in earnest, and we can
afford to spend as much as Weeks boasts that he can, and then
come out ahead.

"Personally I regret the unfortunate combination, and re-
gret that it should in any manner interfere with your business;
but otherwise we are ready for conflict.   Let it come.
Yours, etc.,        M. M. Hamlin."

Burch's letter is too long to be given here.   These letters
were handed by Higgins to the plaintiff, Weeks, about De-
cember 27 or 28, 1886, and Higgins then informed Weeks
that the company denied all liability, and would not pay any-
thing on account of the loss.   Proofs of loss were afterward
made, but not within thirty days after the fire.   We think
that the aforesaid denial of liability on the part of the insur-
ance company, for the alleged reason that the insurance policy
was itself absolutely void, was in effect a waiver of all its
rights to require proofs of loss, and to have the time for it to
make payment of that portion of the amount of the loss for
which it was liable extended sixty days after such proofs of
loss were made. (*Cobb v. Insurance Co.*, 11 Kas. 93, 97, *et seq.*,

and cases there cited.) For this reason we do not think that the action was commenced prematurely.

III. We do not think that the claims of error numbered 3, 4, and 5, in the brief of counsel for plaintiff in error, require any comment. None of them are tenable under the facts of this case. We shall therefore pass to the claim of error numbered 6, which is, that the court below erred in refusing to give certain instructions to the jury. By this claim the plaintiff in error attempts to raise the question of the validity of the insurance policy. It claims that the insurance policy was at the beginning, and always has been, void because of the untruthfulness of the answers made by the plaintiff in his application for the insurance. It is claimed that the plaintiff insured his property as an elevator, when in truth and in fact it was a mill; and that he represented that he kept a watchman on the premises during nights, and that the watchman had no other duties to perform, when in truth and in fact he kept no watchman at all. With respect to the elevator, the question and answer, or rather the statements in the application, are as follows: "Name of elevator: Elevator A." With respect to the watchman, the questions, answers and statements are as follows: "Watchman: Is a watchman kept on the premises during the night? Yes. Is any other duty required of the watchman? No." The facts affecting these questions are substantially as follows: The building was an elevator, containing steam fixtures and machinery to operate the same, a corn-sheller and some other articles named in the application; and also some machinery for grinding corn and other grain, which was not mentioned in the application. As to the watchman, the plaintiff, with eight or ten other business men of the city of Kinsley, employed a private watchman to watch their property during nights, including the property in question, and this watchman had no other duties to perform. The local agent had complete knowledge of all these matters, both with respect to the elevator and all its machinery and contents and how it was used, and with respect to the watchman. Just before the application was made out

and signed, the local agent went through all parts of the elevator building, and examined the same with all its contents, and he then filled up the application, he writing all the written statements therein, and all the answers to the questions therein contained, and then stating to the plaintiff that the questions were all properly answered, and the plaintiff believed they were, and then signed the same. The plaintiff did not make a single untruthful statement to the local agent. The evidence shows all these things, and the special findings of the jury show the most of them.

We would further state, in this connection, that the application was originally a printed application furnished by the insurance company, with blanks therein to be filled up before signing, and then signed by the applicant; and it contained not only the aforesaid questions for the applicant to answer, but it also contained the following among other statements: The party subscribing the application "hereby covenants and agrees to and with said company that the foregoing answers are true," etc., "and such answers or statements are to be always construed and accepted as forming and constituting a continuing warranty;" and the policy which was afterward issued contains a statement that the application should "be considered a part of this contract and warranty by the assured." It was admitted by the defendant's answer and also shown by the evidence "that L. W. Higgins was and is a duly-authorized agent appointed by the defendant at Kinsley, Edwards county, Kansas," but the exact scope of Higgins's agency is not shown. The policy also contained a provision that "the insurance may also be determined at any time at the option of the company, on giving notice to that effect and refunding a ratable proportion of the premium for the unexpired term of the policy." The answers and statements contained in the application were substantially true, although, perhaps, not as complete and exact as they should have been; but the company's agent at Kinsley knew all these things, and the company is bound to know what he knew; and yet the company took the applicant's money, issued to him the policy, and

never canceled the same, although it had the power to do so at any time if it so chose. · The company chose to let the insurance stand until the fire occurred, and then, for the first time, it claimed that the insurance was void. This does not seem like acting in good faith. Under the facts of this case, we do not think that the policy is void, and, in support of this view, we would refer to the following cases decided by this court: *Sullivan v. Phenix Ins. Co.*, 34 Kas. 170; *Continental Ins. Co. v. Pearce*, 39 id. 396; *Insurance Co. v. Barnes*, 41 id. 161; *Protective Union v. Gardner*, 41 id. 397; *Insurance Co. v. Hogue*, 41 id. 524; *Insurance Co. v. Gibbons*, 43 id. 19; *Insurance Co. v. Gray*, 43 id. 497.

IV. As a seventh and last complaint, the plaintiff in error claims as follows:

"The verdict and judgment were excessive, and contrary to law. The petition claimed $2,500, with seven per cent. interest from February 4, 1887:

| | |
|---|---:|
| Interest from Feb. 4, 1887, to Nov. 5, 1887 .... | $131 72 |
| Principal ............................... | 2,500 00 |
| Total ............................... | $2,631 72" |

We think this claim of the plaintiff in error is correct. The jury calculated interest from the time of the fire, to wit, December 4, 1886, while under the petition of the plaintiff below they should have calculated interest only from February 4, 1887, as the petition did not ask for any interest prior to that time. (Civil Code, § 87, subdiv. 3; *Green v. Dunn*, 5 Kas. 254, 261, 262; *City of Burrton v. Savings Bank*, 28 id. 390, 393.) The judgment was rendered November 5, 1887, for $2,660.42. This we think is the only substantial error committed in the case.

The judgment of the court below will be modified by reducing it from $2,660.42 to $2,631.72.

All the Justices concurring.