No. 20,625.

THE STATE OF KANSAS, *Appellee*, v. EMORY A. WALES, *Appellant*.

### SYLLABUS BY THE COURT.

EMBEZZLEMENT — *Warehouseman — Wheat — Certain Evidence Erroneously Excluded.* In the prosecution of a warehouseman for the alleged embezzlement of seven hundred and thirty-five bushels of wheat, it was error to reject evidence offered by the defendant touching his efforts to keep his mill a going concern, to obtain funds to meet his obligations, and a contract signed by the prosecuting witness tending to show a recognition of the defendant as a creditor instead of a bailee, and other evidence fairly going to the question of intent.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed October 7, 1916. Reversed.

*Donald Muir*, of Anthony, and *W. A. Briggs*, of Oklahoma City, Okla., for the appellant.

*S. M. Brewster*, attorney-general, and *Vernon Day*, county attorney, for the appellee; *George E. McMahon*, of Anthony, of counsel.

The opinion of the court was delivered by

WEST, J.: The defendant appeals from a judgment of conviction on the charge of embezzling seven hundred and thirty-five bushels of wheat, of the value of $1075. The twenty-six

assignments of error cover many points not necessary to discuss.

The defendant began the operation of a mill and elevator, and in the summer of 1914 numerous farmers stored their wheat with him. Among these was A. W. Mentze, who put seven hundred and thirty-five bushels into the elevator and took a receipt:

"Rec'd of Mr. A. W. Mentze, 628 bu. test 77# [57#] and 107.05 at test 59# for storage at the rate of one-half cent per bu. per month, and if sold to the mill there is no charge."

The defendant claims to have purchased this wheat, but the prosecuting witness testified:

"It was left between me and Mr. Wales whether we could agree on the price and sell to him, or whether he was to load it out for me on cars. If it was not loaded I was not to haul it out in wagons, but he was to load it in cars. It was no sale at all."

In the following January Mentze talked to Wales about buying the wheat, and was told by him that Wales had a deal on hand and to wait a few days, to which Mentze assented. When the wheat was stored it was worth about ninety cents, and at the time of this conversation it was worth from $1.25 to $1.30. Afterwards Mentze tendered the storage, which tender was refused.

From all the evidence the jury were justified in believing that the wheat was stored and not sold to the defendant, that he became involved, that a company was incorporated to which he sold the mill, taking certain shares of stock, that the wheat in storage was ground up, and afterwards a proceeding in bankruptcy was had respecting the company. The case was carefully tried and the instructions, while unnecessarily prolix, carefully stated the law and were fair to the defendant except that as the fact and not the amount of the alleged embezzlement was in dispute it would have been better to omit the repeated mention of petty larceny.

We find no material error touching any of the rulings of the trial court except as to the rejection of certain items of evidence. One of the reasons why Wales claims to have become involved was that he had to wait some time for the proceeds of a shipment of wheat to New York, but after he had gone east to make the collection and succeeded with considerable expense

he put the proceeds into the business. Afterwards the contract known as "Exhibit 1" was prepared by the company's counsel, which was in substance that the milling company, being indebted from $15,000 to $20,000 to certain named persons and being insolvent by reason of such indebtedness, such persons were to buy the assets of the company for $16,000 provided this would liquidate its debts. It was proposed to pay the creditors $10,700 whenever all the creditors who signed the agreement should agree to release the company in full for their pro rata share of that sum. Further, that as the exact amount of indebtedness was unknown it was agreed that $9200 was to be disbursed immediately upon the execution of the contract by the known creditors and the balance held for six months and then disbursed. This instrument was signed by numerous persons, including the prosecuting witness, and bore date of February 12, 1915, the embezzlement being charged as committed on or about February 8, 1915. This was offered in evidence, and an objection thereto was sustained and of this the defendant complains. It was also offered to show that about the latter part of January, 1915, the company entered into negotiations with Mr. J. C. Elvin relative to making an assignment of the mill property to him on condition that he pay for all the wheat which had been delivered to the milling company by farmers to be paid for at a future date, including that of Mr. Mentze and all other claims against the milling corporation. This offer was rejected. The theory on which this evidence was offered was that the prosecuting witness by signing the contract recognized Wales as his creditor rather than his warehouseman, that instead of harboring a design to commit the crime of embezzlement Wales was honestly endeavoring to arrange for the protection of the prosecuting witness and payment to him for the wheat. The transactions with two other farmers, one at about the same time and the other after the company had been incorporated, were permitted to be shown by the state under the familiar rule that evidence of similar transactions is competent on the question of intent. The entire history of the mill venture by the defendant indicates a series of attempts to put it in the attitude of a going concern, and we think under all the circumstances the defendant had a right to the benefit of the evidence now under con-

sideration, both for the purpose of giving the jury all the facts concerning the claimed relations of bailee and purchaser, and for the purpose of showing the intent which actuated the defendant. While the defendant was permitted to state at some length what "Exhibit 1" was, the document itself was not received in evidence, and hence all the jury had was his somewhat partial description of it. The defendant's offer to show that the company was, by its president, thrown into bankruptcy while he was absent in Oklahoma City, was rejected, neither was he permitted to show that he received nothing in return for the eighteen or nineteen thousand dollars which he put into the property. His offer to show that he paid a great number of depositors at the mill who had received the same sort of certificates as that given the prosecuting witness and that they were paid in cash on the dates appearing thereon and upon demand of the holders, was likewise refused.

The crime with which the defendant was charged being one involving moral turpitude and wrongful intent, and there being a square conflict between the prosecuting witness and the defendant as to the nature of the storage transaction, all of these matters should have been received in evidence in order that the jury might have fully understood the entire situation.

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.