The .State v. Chaplain.

No. 21,279.

THE STATE OF KANSAS, *Appellee*, v. A. R. CHAPLAIN, *Appellent*.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Interpretation of Statute Copied from Another State.* When the courts of a state for many years have given their own interpretation to a statute copied from the laws of another state, it is of no importance that such interpretation does not harmonize with the interpretation given to that statute in the state from which it was adopted.

2. SAME—*Embezzlement—Statute Interpreted.* Section 3463 of the General Statutes of 1915, which declares that any carrier or other bailee who embezzles property, etc., in his possession shall be guilty of larceny, is intended not only to cover offenses of carriers and bailees of the nature and class of carriers, but is intended also to cover embezzling offenses of any class of bailees, and it covers the offense of a bailee who embezzles a piano left in his custody by its owner.

3. EMBEZZLEMENT—*Information—Includes Crime of Larceny.* Where a penal statute declares that one who commits embezzlement shall be adjudged guilty of larceny, a charge of embezzlement which also includes an allegation that the defendant "did steal, take and carry away" the article embezzled is not bad for duplicity.

4. TRIAL—*No Error in Record.* A miscellaneous assignment of minor errors noticed in the opinion which needs no discussion.

5. EMBEZZLEMENT—*Trial—Excluded Evidence—No Prejudicial Error.* It is not prejudicial error to exclude evidence tending to show that the prosecuting witness and the defendant in a criminal case had conducted negotiations looking toward a satisfaction of the private wrong committed by the defendant against the witness, in consideration for which the witness was to withdraw the charge .of the public offense ·involved in the same wrong.

6. SAME—*Instructions.* Instructions given and refused examined and no errors disclosed therein.

7. New Trial—*Impeaching Testimony*. Rule followed that the belated presentation of impeaching testimony is not sufficient to compel the granting of a new trial.

8. New Trial—*Newly Discovered Evidence—Want of Diligence*. Rule followed that the trial court must be satisfied with defendant's diligence in preparing his defense before he will be entitled to a new trial on account of evidence which was not on hand at the trial.

Appeal from Cloud district court; John C. Hogin, judge. Opinion filed July 7, 1917. Affirmed.

*Homer Kennett,* and *Olin Hunter,* both of Concordia, for the appellant.

*S. M. Brewster,* attorney-general, and *M. V. B. Van De Mark,* county attorney, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This action was a prosecution for the embezzlement of a piano. The defendant, a piano dealer in Concordia, sold the piano to the prosecuting witness for $325, taking her promissory note therefor. At the time of the sale the purchaser paid $50 in cash, which payment was indorsed on the note and two days later the defendant discounted and sold the note to a stranger. The piano was purchased as a wedding present for the purchaser's daughter, and defendant agreed to keep the piano until after the daughter's marriage and then ship it to the daughter at Iola. Defendant defaulted in both these particulars. The state's evidence tended to prove that defendant employed a drayman to haul the piano to the railway depot and shipped it out of town. Plaintiff's evidence does not clearly show where or to whom the piano was shipped, but did show that it was effectually made away with. Defendant's evidence tended to show that he had formerly sold the piano on installments to one Shinn; that Shinn had defaulted on his payments; that defendant had taken back the piano, and that he sold it to the prosecuting witness subject to the possibility of Shinn's resumption of payments and the reinstatement of his right to the piano; and it might be equivocally inferred from defendant's evidence that he intended to supply another piano in its stead, but whether to prosecutrix or to Shinn is mere conjecture so far as the record discloses.

Other features of defendant's evidence were that the wholesale house in St. Joseph which supplied defendant with pianos sent a man to take charge of defendant's business in Concordia and that the latter, and not the defendant, had caused the piano to be shipped out of town and disposed of. Much corresponence between the prosecuting witness and the defendant was introduced, but no purpose would be served by detailing it here. The jury found the defendant guilty as charged.

Many errors are urged; few require discussion, and none are serious.

It is first urged that the motion to quash the information should have been sustained. The information was drawn under section 3463 of the General Statutes of 1915, which provides that if any carrier or other bailee shall embezzle or convert to his own use, or make way with or secrete, any goods or property under his care, etc., he shall upon conviction be adjudged guilty of larceny, etc. Defendant contends that this statute, being copied from the Missouri crimes act, should be construed here as there, and that in Missouri the scope of this statute has been restricted by the doctrine of *ejusdem generis* to bailees of the nature and classification of carriers. The doctrine of *ejusdem generis* is all right in a limited way, and the same is true as to the rule that when a statute of another state is adopted the antecedent, authoritative interpretations of that state are likewise adopted; but the latter rule is not an invariable one, nor is it followed where the foreign interpretation is too severe a shock to the intelligence of the courts of the adopting state. (*The State v. Campbell*, 73 Kan. 688, syl. ¶ 7, 85 Pac. 784.) Moreover, when the adopting state has given the statute its own interpretation and applied that interpretation for a long stretch of years without amendment by its own legislature, the presumption that the foreign interpretation at variance therewith was adopted with the act no longer obtains. In time, when many independent interpretations of the act have been made by the adopting state, it is no longer of any consequence what were the interpretations given to the act before its adoption from the foreign state. This section of the crimes act has never been interpreted—or perverted—in Kansas to mean that only a bailee like a carrier or akin to a

carrier could be prosecuted or punished under its terms. It was held in this state nearly forty years ago to apply to a bailee who embezzled a gelding (*The State v. Small,* 26 Kan. 209) ; it has been applied many times to bailees other than carriers and not of the classification of carriers, *non ejusdem generis,* who embezzled public funds (*The State v. Spaulding,* 24 Kan. 1) ; also to embezzlers of private funds (*The State v. Combs,* 47 Kan. 136, 27 Pac. 818) ; and to a warehouseman charged with the embezzlement of quantity of wheat (*The State v. Wales,* 98 Kan. 790, 160 Pac. 204). A multitude of such cases could be cited from our own reports sustaining prosecutions of embezzling bailees who were not like carriers except in the one respect in which all bailees are alike—persons intrusted with the possession of other people's personal property.

Nor was the information bad for duplicity in that it also charged that he "did steal, take and carry away" the piano, etc. (*The State v. Combs,* 477 Kan. 136, 27 Pac. 818.) Embezzlement is declared by statute to be larceny and the criticised verbiage was therefore proper. Perhaps the information was not drawn by a master of the art of good pleading, but since it fully apprised the defendant of the nature of the offense charged against him, the motion to quash was properly overruled. (Crim. Code, §§ 110, 293, Gen. Stat. 1915, §§ 8024, 8215.)

Noting other matters urged by defendant, no error can be discovered in limiting the cross-examination of the witness who purchased from defendant the promissory note given in payment for the piano, nor in limiting the cross-examination of the prosecutrix touching correspondence between her and the defendant. The same observation may be made touching letters and portions of letters admitted and excluded. The excluded matter was self-serving, extraneous to the issues, and irrelevant; the admitted correspondence rather pointedly disclosed the defendant's knavery, his bad faith and criminal intent in his dealings with the prosecutrix and her daughter in the piano transaction. There is some plausible ground for the state's contention that apparently defendant was only "stringing" the prosecutrix and her daughter until the statute of limitations would bar redress for them and punishment for him.

The State v. Chaplain.

It is urged that the state failed to prove ownership of the piano, and that if the evidence showed a transfer of ownership from defendant to any one it was not to the prosecutrix but to her daughter. Not at all. The prosecutrix was the owner of the piano and the proof abundantly showed that fact. That she had acquired that ownership with a purpose to make a wedding gift of it to her daughter is immaterial. Gifts and the ownership of gifts become effective on delivery. The delivery was not to be made until after the daughter's marriage, nor until the latter had settled in Iola. Ere then and while the ownership was still in the prosecutrix the piano was criminally embezzled and converted by defendant. A certain entry from defendant's stock book relating to a prior sale of the piano to one Shinn was properly excluded as immaterial. So, too, was the proffered evidence of Shinn as to whether Shinn had made further payments on the piano after he had surrendered it to defendant.

The proffered evidence of a witness for defendant tending to show negotiations between prosecutrix and defendant to compound the felony of the latter was excluded. On the motion for a new trial this evidence was presented by affidavit:

"That soon after the preliminary and on Saturday, either the 9th or the 16th day of December, 1916, said Mrs. Bevan came to affiant's grocery store in Concordia, and asked affiant to see said Chaplain and to tell him that if he, the said Chaplain, would pay Mrs. Bevan the amount which she had agreed to pay for the piano in question, she would let him go; and that pursuant to said request affiant caused said Chaplain to come to affiant's store a few days thereafter and affiant told said Chaplain what Mrs. Bevan had said; and that said Chaplain told affiant that he was in jail and could not get the money while there, but that he Chaplain would give Mrs. Bevan such security as he had to insure the payment of the amount she had agreed to pay for said piano; and that affiant told Mrs. Bevan what Chaplain had said but that she refused to accept said security."

It is urged that this evidence was proper to show that the relation of mere creditor and debtor existed between prosecutrix and defendant. But the evidence showed nothing of that sort. It shows an offer and negotiations to change the relationship of an injured bailor and an unfaithful bailee into

27—101 Kan.

that of creditor and debtor—a bargain which did not and could not bind the state—the party offended by the breach of its penal laws. The misconduct of defendant involved two wrongs —a private wrong against the prosecutrix, and a public wrong against the state and denounced by its laws. The proffered evidence, if true, would merely have shown negotiations to compound a crime. This case is altogether different from that of *The State v. Wales,* 98 Kan. 790, 160 Pac. 204, where the question was whether the defendant was a bailee or a debtor. No such question exists here, even by the defendant's own testimony. The exclusion of this evidence was not prejudicial error.

Error is assigned on the instructions given and refused. Defendant requested ten instructions. One was a peremptory instruction for acquittal; another was that the criminal law can not be used to enforce the payment of debts—proper enough as an abstract statement of law but impertinent here— for in this case there was no debt, no pretense of indebtedness, no relation of debtor or creditor or competent evidence to that effect. The instructions given by the court were comprehensive and omitted no proposition of law upon which defendant had a right to rely, and they covered all the pertinent features of the instructions requested by defendant. The criticisms of the instructions are without substantial merit.

On the motion for a new trial, affidavits of two persons connected with the St. Joseph wholesale house, which furnished defendant with pianos to sell in Concordia, were offered. These averred that they had caused the piano to be shipped from Concordia to St. Joseph and later had returned it to Shinn, the original purchaser, who had defaulted in his payments and had surrendered it to defendant. They also averred that defendant had nothing to do with the shipment of the piano from Concordia. There is no proper showing of diligence to have this evidence on hand at the trial. Defendant well knew that his machinations in this piano transaction were the gist of this prosecution; if his hands were clean it would have been a task of no great difficulty or expense to have procured this evidence at the trial. Moreover it is largely impeaching testimony against that of the drayman, and against the evidence of two other witnesses for the state who had

testified that defendant had told them that he had shipped the piano to Shinn. As such it is not sufficient to disturb the judgment nor to warrant a new trial. (*Lagneau v. Bource*, ante, p. 170, 165 Pac. 844.) Read in connection with the state's evidence, it might be said that the affiants, unwittingly, at least, had aided and abetted the defendant in embezzling the piano of the prosecutrix.

The judgment is affirmed.

WEST, J., dissents.