No. 25,741.

H. C. BLOMBERG, *Appellant*, v. THE STATE BANK OF OGDEN, *Appellee*.

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Review—Ruling on Demurrer to Evidence*. A motion for a new trial is not requisite to appellate review, where the court sustains a demurrer to plaintiff's evidence—following *Wagner v. Railway Co.*, 73 Kan. 283, 85 Pac. 299.

2. CONTRACTS—*Evidence—Consummation*. In an action to recover on account of the alleged breach of a bank's contract to keep insured a customer's bonds deposited with it for safe-keeping, the proceedings considered, and *held*, the evidence and circumstances were sufficient to require submission to the jury on the question of whether a contract was consummated.

3. EVIDENCE—*Parol Evidence Affecting Writing—Receipts*. The receipts given by the defendant to plaintiff were not such written contracts as would preclude the introduction of evidence showing the intent of the parties.

4. BANKS AND BANKING—*Officers—Scope of Employment—Agreements Ultra Vires*. The acts of the cashier of a bank in accepting bonds for safe-keeping, with an agreement to insure, were within the scope of his employment, and the agreement to insure was not *ultra vires*.

Blomberg v. State Bank.

Appeal from Riley district court, FRED R. SMITH, judge. Opinion filed June 6, 1925. Reversed.

*Jas. V. Humphrey,* and *Arthur S. Humphrey,* both of Junction City, for the appellant.

*Hal E. Harlan,* and *A. M. Johnston,* both of Manhattan, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on account of the alleged breach of a bank's contract to keep insured a customer's bonds, deposited with it for safe-keeping. The defendant prevailed and plaintiff appeals.

The plaintiff owned $1,000 in Liberty bonds which he kept in a safety deposit box in the defendant bank. On and prior to November 16, 1922, he talked with the defendant's cashier with reference to taking the bonds from his safety deposit box and depositing them with the defendant for safe-keeping. There was testimony that the cashier told him he could deposit the bonds with the bank for safe-keeping, because they would then be put in the bank's safe, and that everything kept in the safe was fully covered by insurance. He asked if he would be required to pay any part of the insurance and was told that he would not, as the bank did that to protect its customers; that he need not register the bonds, as the insurance protected them. He thereupon deposited the bonds with the bank for safe-keeping. On three subsequent occasions he deposited, for safe-keeping, additional securities under the same arrangement, until his deposits aggregated $4,000. He was given receipts on the different occasions, the first of which reads:

"R. W. G. 6669.

THE STATE BANK OF OGDEN.

OGDEN, RILEY COUNTY, KANSAS, Nov. 16, 1922.

Received of H. C. Bloomberg One Thousand in government bonds for safe-keeping.                                      THE STATE BANK OF OGDEN,

$1,000.00.                                                    R. McCHESNEY, *Cashier."*

The other receipts were similar in form.

On November 8, 1923, burglars blew the bank safe and took cash and securities of the value of $16,000. Plaintiff's securities were among those stolen. The safety deposit boxes were not molested. The day after the burglary the cashier told plaintiff not to worry, that everything was insured. It developed, however, that the bank's insurance policy was for only $6,000. The cashier stated that he

"thought he had enough insurance, and did not know he had that many bonds." The bank sought to prorate the insurance money among its customers, and refused to pay plaintiff more than his *pro rata* share ($1,500).

The cashier testified that he was the active executive officer who managed the bank from day to day and dealt with the customers, and that the directors held only four meetings a year; that a record of plaintiff's securities was kept in a ledger with the record of the securities of the other customers deposited for safe-keeping, and that this book was accessible to the directors. This record had been kept for three years. The bank had been accustomed to take deposits of bonds for safe-keeping ever since the Liberty loan drives started—a matter of five years. The insurance policy to protect such deposits had been carried about three years.

A demurrer to plaintiff's evidence was first overruled, but after both parties had rested the court changed its ruling and concluded that plaintiff had not proved a cause of action on his contract, declined to submit the case to the jury, but directed a juryman to sign, as foreman, a verdict awarding plaintiff what was agreed to be due him from the proceeds of the insurance ($1,500).

The plaintiff contends that the court erred in deciding, as upon demurrer, that the evidence of plaintiff was insufficient to prove a cause of action in favor of plaintiff and against defendant on the oral contract set forth in the petition and the breach thereof by defendant, and in adjudging a nonsuit against plaintiff on the claims set forth in his petition other than for his admitted portion of the proceeds from insurance collected for plaintiff and others.

The defendant contends that the plaintiff is concluded because he filed no motion for a new trial.

Plaintiff's petition set out two claims, one upon oral contract to keep the plaintiff's bonds insured for $4,066.71, and one for money had and received in the sum of $1,500, this being plaintiff's share of the proceeds from insurance. The answer admitted that plaintiff was entitled to his *pro rata* share of the insurance, but denied the making of the contract, thereby contesting the first claim.

The journal entry of judgment, in part, reads:

"The court finds that plaintiff is entitled to his *pro rata* share of the said insurance proceeds collected by defendant as aforesaid, the same amounting by agreement of the parties to $1,500, but the court finds that the evidence of the plaintiff is insufficient to prove a cause of action in favor of plaintiff and against defendant on the claims set forth in plaintiff's petition other

than for said portion of said insurance proceeds. . . . Plaintiff requested the court to submit to the jury, under appropriate instructions, the issues presented by the pleadings involving the remainder of plaintiff's claim of $4,066.77, which the court, after due consideration, refused to do, to which plaintiff excepted; this request being made prior to the peremptory instructions to the jury as aforesaid."

From which it appears that the court distinguished and dealt separately with the two claims as though they were two causes of action. It directed a verdict of $1,500 for plaintiff's conceded portion of the insurance, but concluded that his evidence was insufficient to prove a cause of action on the making and breaking of the oral contract. The effect of the court's ruling on this claim was to sustain a demurrer to plaintiff's evidence.

In *Wagner v. Railway Co.*, 73 Kan. 283, 85 Pac. 299, it was said:

"A demurrer to evidence raises nothing but a question of law, and it is impossible for its decision to be a decision of the issues of fact. If sustained, it not only leaves the issues of fact undetermined, but it deprives the party against whose evidence it is directed of any opportunity of having them determined by a verdict, report or decision; and it is only 'after' a verdict, report or decision which, unless vacated, settles all controversy with reference to the issues of fact that a motion for the reëxamination and settlement anew of those issues is in order." (p. 286. See, also, *Darling v. Railway Co.*, 76 Kan. 893, 93 Pac. 612.)

Under the circumstances we are of the opinion a motion for a new trial was not necessary.

The defendant contends that there was not sufficient evidence to show a contract to insure, and that, even if there were one which would bind the defendant as to the first deposit, the later deposits were not covered by it. It would serve no useful purpose to set down what was said by the parties. The evidence and circumstances were sufficient, in our opinion, to require submission of the question to the jury under proper instructions. This applies to all the deposits. (See *Rains v. Weiler*, 101 Kan. 294, 166 Pac. 235; *Schroeder v. Mauzy*, 118 Pac. 459 [Cal.]; 13 C. J. 241, 787; 6 R. C. L. 586, 587.)

The defendant contends that the receipts given by the bank to plaintiff when he deposited his bonds constitute a written contract which cannot be supplemented by other testimony of the agreement. The plaintiff directs attention to the fact that he asked the cashier if he would give a receipt, and he said that he would, from which he contends that the effect of these written instruments was limited to their function as receipts.

In 5 Wigmore on Evidence, section 2432, it was said:

"A receipt—*i. e.*, a written acknowledgment, handed by one party to the other, of the manual custody of money or other personalty—will, in general, fall without the line of the rule; *i. e.*, it is not intended to be an exclusive memorial, and the facts may be shown irrespective of the terms of the receipt." (See, also, *Ellicott, Assignee, v. Barnes*, 31 Kan. 170, 1 Pac. 767; *Talcott v. National Bank*, 53 Kan. 480, 36 Pac. 1066; *Haskett v. Elevator Co.*, 81 Kan. 356, 105 Pac. 432; *Machine Works Co. v. Singletary*, 104 Kan. 460, 179 Pac. 328; 10 R. C. L. 1025; Note in L. R. A. 1918B 298.)

The defendant contends that the acts of the cashier were not within the scope of his authority, and that the defendant could not legally enter into a contract to insure plaintiff's bonds, because such a contract would be *ultra vires*. We cannot concur in that view. The bank had taken special deposits of securities like those here involved ever since the beginning of the Liberty loan drives. In 1921 it took out a policy of insurance which protected such deposits. A ledger had been kept for three years in which the securities of each depositor were listed. The directors of the bank met four times a year and had access to this ledger, the same as the other records of the bank. The cashier was the managing officer of the bank, had charge of and conducted its affairs. The directors permitted him to carry on the bank's business with all of its incidents. The taking of such securities on special deposit has become an incident of the banking business. The nature of the property and its value demands especial diligence on the part of the banks, and banks are held responsible if they are derelict in this duty. (See 3 R. C. L. 427, 450, 476; *Bloomheart v. Bank Commissioner*, 114 Kan. 786, 221 Pac. 279, and cases cited; *Trustees v. Elon Banking Co.*, 182 N. C. 298, 17 A. L. R. 1205; *Pennington v. Farmers & Merchants' Bank*, 144 Tenn. 188.)

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

Johnston, C. J., not sitting.