Docking v. National Surety Co.

---

No. 26,894.

WILLIAM DOCKING, Receiver of THE CENTRAL STATE BANK OF KANSAS CITY, *Appellee,* v. THE NATIONAL SURETY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. FIDELITY INSURANCE — *Construction of Bond or Contract — Embezzlement Within Meaning of Bond.* A bank obtained a surety bond indemnifying it against loss, to a limited amount, which it might sustain by reason of any act of larceny or embezzlement of L., its president and active managing official. The note for $10,000 of a lumber company to the bank was sold by L. to G., a customer of the bank who desired an investment. The note was left at the bank for safe-keeping; L. collected the interest and placed it to G.'s credit. The lumber company, on collateral deposited, borrowed $5,000 of the bank to pay on this note. L. handled the transaction for the bank and misapplied the money, using $2,500 of it to pay his personal note to P. *Held,* the facts stated, together with the refusal of L. on demand to repay the money wrongfully used, was embezzlement within the meaning of the bond.

2. SAME—*Continuing Bond—Time for Making Claim.* The provisions of a surety bond examined, and *held:* (a) That the bond is, in effect, a contract of insurance to be construed in accordance with the rules for the construction of insurance policies; (b) that it is a continuous obligation, that is, beginning at a date named and·continuing until terminated, or liability thereunder ceases, in accordance with conditions or provisions contained therein; (c) under the facts stated the claim was made to the surety company within the time required by the conditions of the bond.

3. SAME—*Proof of Loss—Time for Making—Waiver by Denial of Liability on Other Grounds.* When, under facts stated in syllabus 1, proof of loss was made to the surety company within thirty days after demand and refusal to pay, and the surety company made no objection that proof of loss was not made in time, and when sued raised no such question in its answer, but

Embezzlement, 20 C. J. p. 427 n. 24. Fidelity Insurance, 25 C. J. pp. 1091 n. 27, 1096 n. 79, 1103 n. 64; 16 A. L. R. 1493.

denied that an embezzlement had occurred, and on the trial raised for the first time the question that proof of loss had not been made in time, *held*, the question was raised too late; it had been waived.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. Mc-CAMISH, judge. Opinion filed January 8, 1927. Affirmed.

*Edwin S. McAnany, Maurice L. Alden* and *Thomas M. Van Cleave*, all of Kansas City, for the appellant.

*A. J. Herrod*, of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action by the receiver of a failed state bank to recover on a surety bond given to indemnify the bank against loss by the larceny or embezzlement of its president. The plaintiff recovered judgment in the court below. The defendant has appealed.

It is first contended by appellant that the transaction complained of does not amount to embezzlement within the meaning of the bond and of the law. The facts briefly stated are substantially as follows: Mr. Charles E. Lawrence was president and the general managing officer of the bank. To some patrons of the bank who desired him to do so he negotiated notes which had been made payable to the bank. On March 17, 1921, Mr. Abe Glass, a customer of the bank, had $4,000 which he desired to handle in this manner. A note for that amount, executed by the East Oregon Lumber Company to the bank, was indorsed without recourse, for which the bank received payment from Mr. Glass. The note was placed in an envelope and left with the bank for safe-keeping. Mr. Lawrence, on behalf of the bank, executed to Mr. Glass a receipt, reciting that it was holding the note for safe-keeping and that the note would be delivered only to him or his legal representatives. On May 5, 1921, Mr. Glass invested $6,000 in another note executed by the East Oregon Lumber Company to the bank, and handled in the same way as the first one. These two notes became due and Mr. Lawrence merged them into one note of the East Oregon Lumber Company for $10,000, dated April 11, 1922, due in six months. This last note was placed in the envelope marked "Abe Glass" and a similar receipt made out, which was never delivered to Mr. Glass. Interest was paid to Mr. Glass from time to time on the $10,000 which he had invested. This was done by Mr. Lawrence crediting the amount of the interest to Mr. Glass' account in the bank. On April 28, 1923,

Lawrence was pressing the East Oregon Lumber Company for payment upon this note. In order to procure the money for the payment the East Oregon Lumber Company negotiated a loan from the bank of $5,000 by placing accounts due it with the bank as collateral security for the loan. This money was to be applied upon the note which had been indorsed and placed in Abe Glass' envelope and owned by him. Mr. Lawrence, instead of using this money for the purpose for which the bank loaned it, took $2,500 of it for his own use and placed his note for that amount in Mr. Glass' envelope. He also took a note of the C. D. Williams Grain Co., which had been made payable to the bank for $2,500, indorsed the same and placed it in Mr. Glass' envelope. He credited the $10,000 note of the East Oregon Lumber Company in Mr. Glass' envelope with a payment of $5,000. Neither Mr. Glass nor the East Oregon Lumber Company was informed of these transactions. The $5,000 which the East Oregon Lumber Company borrowed from the bank to pay on its note then owned by Abe Glass was in fact paid by Lawrence to a Mary Passler, to whom Lawrence owed $2,500 and who held a note previously owned by the bank for $2,500. Appellant argues that this transaction did not constitute embezzlement of funds of the bank; that the notes owned by Abe Glass and by Mary Passler were not owned by the bank, but were simply there for safe-keeping; that in using money to pay one which was intended to pay the other was a wrong as to these individuals, not to the bank. This contention cannot be sustained. We shall not indulge in refinement of reasoning for relieving one from an obvious defalcation. The East Oregon Lumber Company did not owe Mary Passler anything, and borrowed no money to pay her. It borrowed of the bank $5,000 to pay on its $10,000 note. Mr. Lawrence, as president and active manager of the bank, without the knowledge either of the East Oregon Lumber Company or of Abe Glass, took this $5,000 borrowed by the East Oregon Lumber Company, used it in a manner which suited his purpose, instead of using it for the purpose for which the loan was made. As president of such bank he was rightfully in possession of property, and when he used it to pay debts of other persons to Mary Passler, and took $2,500 of it for his individual use, he in fact embezzled the money, within the meaning of our statute and within the meaning of this bond. (*State v. Chaplain,* 101 Kan. 413, 166 Pac. 238; *State v. Johnson,* 109 Kan. 239, 199 Pac.

104; *State v. Pratt*, 114 Kan. 660, 220 Pac. 505; *State Bank v. Richardson*, 117 Kan. 695, 232 Pac. 1070; *Blomberg v. State Bank*, 118 Kan. 688, 241 Pac. 242; *State v. Wacker*, 120 Kan. 387, 243 Pac. 1026; *Miller v. Viola State Bank*, 121 Kan. 193, 246 Pac. 517.)

Appellant contends that no demand was made in time under the terms of the bond. This requires an examination of the bond, the material portions of which read as follows:

"The National Surety Company (Surety), in consideration of the payment of the premium of seven and 50/100 dollars ($7.50), and payable on the thirteenth day of June during each and every year that this bond shall continue in force, hereby agrees to make good within sixty (60) days after receipt of proof satisfactory to it, any loss, not exceeding twenty-five hundred dollars ($2,500), which Central State Bank, Kansas City, Kansas, employer, may sustain by reason of any act of larceny or embezzlement of Charles Edward Lawrence, employee, as president in the employer's service, committed after the 13th day of June, 1922, and before the termination of this bond, subject to the following express conditions which shall be conditions precedent to any recovery hereunder."

The first and second conditions are not relied upon.

"3d: That the employer, upon becoming aware of any act giving rise to a claim hereunder, or facts indicating such acts, shall immediately notify the surety by registered letter, giving all known particulars, addressed to its home office, No. 115 Boardway, New York City, and shall within sixty (60) days after discovery of any loss, file with the surety an itemized statement of such loss, and produce for investigation all books, vouchers and evidence in the employer's possession which the surety may require."

The fourth and fifth conditions are not relied upon.

"6th: The surety's liability hereunder shall cease, immediately, as to subsequent acts of the employee, (a) upon discovery by the employer, or any of its officers, of any default hereunder on the part of the employee; (b) the employee leaving for any reason the services of the employer; (c) fifteen (15) days after receipt by the employer of written notice from the surety of its desire to withdraw as surety for said employee, and any claim of the employer against the surety must be duly presented to the surety, as above provided, within three (3) months after any such termination of the surety's liability, or within three (3) months after the date of expiration of each and every period of twelve months from the date hereof, during the continuance of this bond, as to the acts or defaults of said employee, committed during any such period of twelve months."

The seventh condition relates to the time in which an action must be brought after the giving of notice of claim. The eighth provides the bond shall be void unless the premium is paid within sixty days after the same becomes due. The ninth and tenth conditions are not relied upon.

The bank was closed and taken charge of by the bank commissioner on February 4, 1924. A deputy bank commissioner was placed in charge of the bank, who was later appointed receiver. Soon thereafter he discovered the manner in which Lawrence had handled the $5,000 loan by the bank to the East Oregon Lumber Company and the fact that he had appropriated $2,500 of it to his own use, and made demand upon Lawrence for the repayment of the fund. This demand was not complied with. Thereafter and on February 28, 1924, he notified the surety, as required in condition three of the bond. Appellant does not contend that notice after discovery of the defalcation was not immediately given, nor that the form or contents of the notice was insufficient, but contends that the discovery of the embezzlement was not had and demand made therefor within the time fixed in the bond as the limit of the surety's liability thereunder, as set out in the sixth condition of the bond. On this point appellant relies upon that portion of the sixth condition of the bond which reads:

". . . Any claim of the employer against the surety must be duly presented . . . within three (3) months after the date of expiration of each and every period of twelve months from the date hereof, during the continuance of this bond, as to the acts or defaults of said employee, committed during any such period of twelve months."

And it is argued by appellant that the embezzlement of Lawrence relied upon was alleged and shown to have been committed April 28, 1923, which was within the first twelve months' period of the bond, counting from its date; that is, within the twelve months' period of June 13, 1922, and June 13, 1923, and since the claim of loss was not made within three months after the termination, June 13, 1923, of that twelve months' period, and was not in fact made until February 28, 1924, there was no liability on the bond, and hence could be no recovery thereunder. This condition of the bond is not open to the interpretation appellant claims for it. It will be noticed that this condition begins:

"The surety's liability hereunder shall cease, immediately, *as to subsequent acts of the employee* (italics ours) (a) . . .; (b) . . .; (c) fifteen (15) days after receipt by the employer of written notice from the surety of its desire to withdraw as surety for said employee, . . ."

Then continuing in the same sentence, and without even a period, is the language relied upon by appellant. At first thought it seems clear that all of these matters in this paragraph are statements of

conditions under which the surety's liability shall cease as to *subsequent acts* only of the employee; but so construed it is difficult to give the language relied upon by appellant an intelligent meaning.

The bond in this case is, in effect, a contract of insurance, and is to be construed in accordance with the rules for the construction of insurance policies. (*Fourth & First Bank & Trust Co. v. Fidelity & Deposit Co.*, 281 S. W. 785 [Tenn.] ; *State, ex rel., v. New Amsterdam Casualty Co.*, 110 Okla. 23; *Lyons v. Surety Co.*, 243 Mo. 607; *First Nat. Bank v. Nat. Surety Co.*, 228 N. Y. 469 [reversing, on other grounds, same case in 169 N. Y. S. 774] ; *First Nat'l Bank v. Hartford Accident and Indemnity Co.*, post, p. 334.)

It is a continuing contract of insurance, beginning at the date provided for in the policy, and continuing as long as annual premiums are paid (and for 60 days after the last payment), unless liability thereunder is terminated or ceases because of some one, or more, of the conditions of the policy. These conditions, so far as here material, are: *First,* that the employer, upon becoming aware of any act giving rise to a claim under the policy, or facts indicating such acts, shall notify the insurer (paragraph 3). In this case appellant concedes that this notice was given in accordance with the provisions of this condition. *Second,* the insurer's liability shall cease, as to subsequent acts of the employee, in events (*a*), (*b*), (*c*), (paragraph 6), but in (*c*) is included two provisions, in the alternative, as to time for presenting claims, (1) within three months after discovery of default, (2) or within three months after the end of the year within which such default was made. The default in this case was discovered in February, 1924, and claim was made within the three months required by this condition of the bond; in fact, it was made within one month. Perhaps it is more accurate to say the "default" occurred in February, 1924, for it was at that time his previous misapplication of the bank's money was discovered and demand made for its return. The failure to return the money on demand was the default which caused financial loss to the bank.

The word "default" in its larger sense means the failure to perform a duty or obligation, and in this sense might be applied to the failure of Lawrence to perform his duty in April, 1923, when he misapplied the money of the bank. The word also means a failure to pay an obligation when due or on proper demand (Webster's International Dictionary; Bouvier's Law Dictionary; Words and Phrases, 1st and 2d series), and this is the only kind of a default

which would cause financial loss to the insurer in this case; for, its contract was "to make good . . . any loss . . . which . . . (the bank) . . . may sustain by reason of any act of . . . embezzlement . . ." of Lawrence. Now, had Lawrence himself "made good" the sum he had previously misappropriated, when such misappropriation was discovered and demand for its payment was made upon him, in February, 1924, there would have been no sum for which the insurer was liable. But Lawrence failed to pay on such demand, although clearly it was his duty to do so, and hence made default. This is the default which caused financial loss to the bank, and for which the insurer is liable. Hence, it is proper to say that the default, as that word is used in paragraph 6 (c), is the failure of Lawrence to pay to the bank the money he had previously misappropriated, and this default occurred or was committed in February, 1924.

In any event the language is susceptible of the construction given similar language in a similar surety bond in *National Bank v. Hartford Accident and Indemnity Co.*, supra, namely, that it provides in the alternative the time within which notice of claim must be given— "within three months after any such termination of the surety's liability, or within three months after" the period of twelve months, as there defined. The claim in this case was made within that time.

Appellee contends that, even if the bond be given the construction now contended for by appellant, that provision of the bond was waived by the defendant in the court below. This contention has merit. When the loss was discovered soon after February 4, 1924, and demand was made upon Lawrence to return the money, which demand was not complied with, the defendant was notified in detail and demand made upon it. Defendant then made no contention that the notice was not in time, but sent a representative who checked the records of the bank, conferred with the deputy commissioner in charge, and made a report to the defendant company. The defendant then made no contention that the loss had not been reported in time. In fact, it did nothing until a letter was written it May 1, 1924, inquiring when it would make settlement. It then answered that it was arranging for a conference with appellee's counsel and requested "that pending such conference you will withhold taking any steps with reference to filing suit." Its representative did not appear for a conference. After this suit was filed defendant an-

swered making certain admissions, not now in question, by a general denial that an embezzlement had occurred. There was no denial of liability on any other ground, nor for the reason now contended that the demand was not made in time under the terms of the bond, until during the progress of the trial in the court below. It has been frequently held in this court that when liability is denied on other grounds the contention that the claim was not presented in time is waived. (*Insurance Co. v. Weeks,* 45 Kan. 751, 26 Pac. 410; *Insurance Co. v. Wallace,* 48 Kan. 400, 29 Pac. 755; *Insurance Co. v. Davis,* 59 Kan. 521, 53 Pac. 856; *Bank v. Colton,* 102 Kan. 365, 170 Pac. 992; *Erickson v. Commercial Travelers,* 103 Kan. 831, 246 Pac. 989.)

The judgment of the court below is affirmed.