The State v. Shoemaker.

---

No. 24,411.

THE STATE OF KANSAS, *Appellee,* v. A. F. SHOEMAKER, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Forgery of Check—Misconduct of Jury—Procuring Magnifying Glasses During Deliberation.* In a prosecution for forgery of a check, places on the check where it was alleged alterations had been made appeared rubbed and blurred. During its deliberations, the jury procured two magnifying glasses, took them to the jury room, and used them to examine the check. *Held,* neither misconduct of the jury nor reception of evidence not authorized by the court, requiring reversal of a judgment of conviction, were made to appear.

2. SAME. Various assignments of error considered, and held to be without substantial merit.

Appeal from Franklin district court; HUGH MEANS, judge. Opinion filed February 10, 1923. Affirmed.

*H. M. Funston, B. F. Bowers,* and *W. B. Pleasant,* all of Ottawa, for the appellant.

*Richard J. Hopkins,* attorney-general, and *R. R. Redmond,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The defendant was convicted of forgery, and appeals.

T. J. Lawson lives in the northwest part of Franklin county, about eighteen miles from Ottawa. Between nine and ten o'clock on the morning of December 31, 1921, the defendant appeared at Lawson's house, and sold him some furs. Lawson paid for the furs with a check to the defendant, on the Peoples State Bank of Michigan Valley. The stub in Lawson's check book was filled out accordingly. The check and stub were written by Lawson's wife, as she was in the habit of doing, by his authority. The defendant was at Lawson's house probably an hour and a half. When he went away he said he was going to Ottawa, and he took the road leading in that direction, driving a Ford coupe. Before three o'clock he was in Ottawa. The defendant testified he went from Lawson's to Ottawa by way of Pomona, in Franklin county, taking his dinner at Pomona. The defendant had previously given a check to the Rhinehart Motor Company of Ottawa for $203, which had not been paid for want of funds, and he had agreed to pay the Motor company some money on December 31. When he arrived in Ottawa, he indorsed and delivered Lawson's check to the Motor company. When the check was handed to the Motor company, the Motor company called the Michigan Valley Bank by telephone, to find out if the check was good. The check was read to the bank as Lawson's check for $87.30 and following the telephone conversation, the Motor company credited the defendant with the amount of the check, $87.30. The Motor company deposited the check with the State Bank of Ottawa, which placed it in the usual channel for collection. It so happened that Mrs. Lawson listened in while the Motor company was talking to the Michigan Valley Bank by telephone. Lawson then told the Michigan Valley Bank to call him, if a check from him to the defendant for $87.30 came in. When the check arrived at the Michigan Valley Bank, on January 6, Lawson was sent for, and he repudiated the check, because the check he gave the defendant was for $37.30. The defendant took the bold stand that the check was written originally for $87.30, and he sued Lawson for $2,000 for slander. The defendant then wanted to

The State v. Shoemaker.

settle so it would be satisfactory to everybody concerned, but Lawson said the matter was in the county attorney's hands, and he could make no settlement.

At the trial there was just one fact in dispute, on which guilt or innocence of the defendant depended. Was the check given originally for $87.30, or for $37.30? If for $37.30, of course the defendant raised it. This being true, all the errors assigned, except one to be considered later, seem very technical and, assuming error to have been committed at all, nonprejudicial. There were some slight discrepancies, in minor formal matters, between the check as described in the information and the instrument itself, but not such as to make identity uncertain in any degree. Venue was sufficiently established by circumstantial evidence. Incorporation of the bank on which the check was drawn was properly proved by oral testimony of a person connected with the bank, who knew the fact. But one handwriting expert was used to prove the forgery, but proof of forgery was not rested on expert testimony alone. The expert was qualified, and the checks which he used as a basis of comparison with the forged check were admitted to be genuine checks of the defendant. The court read to the jury the forgery statute. The statute is plain, and the court did not need to expatiate upon its terms, or to call special attention to the necessity for proof of incorporation of the bank. Some other inconsequential matters are mentioned in the brief.

The motion for a new trial assigned, as grounds for a new trial, misconduct of the jury and reception of unauthorized evidence. At the hearing on the motion, the following affidavit of one of the defendant's attorneys was read:

"That since the trial of said case, I have had occasion to talk with one of the jurors who was empaneled to try, and did try said case. That the juror so talked to by me admitted to me that some of the jurors procured two magnifying glasses, after being instructed by the court and during their deliberation of said cause, and took said magnifying glasses into their jury room, and there used the same on the check in question in this case, to determine whether or not there was any erasures or interlineations or changes therein."

The affidavit further stated that the magnifying glasses were procured at the end of the first day's deliberation of the jury, and were used during the second day's consideration of the case. The statute reads as follows:

"The court may grant a new trial for the following causes, or any of them:

"*First,* when the jury has received any evidence, papers or documents not authorized by the court, . . .

"*Second,* when the jury . . . have been guilty of any misconduct tending to prevent a fair and due consideration of the case.". (Gen. Stat. 1915, § 8191.)

The affidavit is hearsay, stated in the form of a conclusion, and might be disregarded altogether. Let it be conceded, however, that magnifying glasses were taken to the jury room, and were used in reading the check. The defendant testified that, at the places on the check where alterations were charged, it appeared rubbed and blurred, and that these appearances were given the check after it left his hands. There was no dispute, therefore, that the check disclosed to the naked eye abrasions of the surface of the paper and blurring of the figure 8 and the word eighty. The name "magnifying glass" gives no information respecting a glass, except that presumably it magnifies. If the glasses used were simply reading glasses, such as are commonly used for reading fine print, they might have rendered the face of the check more distinct; how much more distinct, depended on magnifying power. Unless they were of such a type that skill in use and experience in interpreting revelations were required, they could not have confused or misled. In no sense could it be said the jury received evidence not authorized by the court, unless the glasses were of such power and the condition of the paper were such that invisible, unerased portions of the figure 3 or of the word thirty were rendered visible, perhaps with the figure 8 or the word eighty superimposed upon them. What the glasses were is not disclosed, and what occurred may have been no more than if a juror, with magnifying lenses in his spectacles, had allowed his fellows to use them.

The statute reads as follows:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." (Gen. Stat. 1915, § 8215.)

In the case of *The State v. Fleeman,* 102 Kan. 670, 171 Pac. 618, the court said:

"The code of criminal procedure was framed to supersede the common law with a more rational system. While it is defective in many respects, and in many others exhibits a conservatism which contrasts strongly with its general liberality, it is distinctively modern. The tradition of the common law, however, was so strong that it came near superseding the code. In time the code was rediscovered, and it is the purpose of the court to interpret and apply it according to its true intent and spirit." (p. 677.)

Milling Co. v. Waite.

Formerly, violation of some positive provision of a statute, such as .comment by the county attorney on failure of the defendant to testify, or reception by the jury during its deliberations of unauthorized evidence, required reversal. True to common-law tradition, the court did not inquire beyond the fact. Since rediscovery of the criminal code, this is no longer true. It must appear that a substantial right was prejudicially affected. (*The State v. Peterson*, 102 Kan. 900, 171 Pac. 1153; *The State v. Farrar*, 103 Kan. 774, 176 Pac. 987.) The same is true of misconduct of the jury. Formerly, misconduct required reversal. Then it was said the state must show no prejudice resulted. Now, the court will examine into the matter and, in the absence of a specific showing by the state of no prejudice, the court will not reverse, unless it is able to say the misconduct was such that harm to the defendant naturally would and probably did result. It is not possible to make such a declaration from the meager showing contained in the affidavit presented in support of the motion for a new trial.

The judgment of the district court is affirmed.

HOPKINS, J., not sitting.