State v. Eary.

No. 26,847.

The State of Kansas, *Appellee*, v. Miles R. Eary, *Appellant*.

SYLLABUS BY THE COURT.

1. Embezzlement—*Conversion by Agent—Information—Necessary Averments.* The proceedings considered in a prosecution of an agent for failure to deliver on demand money received by virtue of his employment, and *held,* omission to aver that the amount demanded was due "after deducting his reasonable or lawful fees, charges or commissions for his services" (R. S. 21-545), did not render the information defective.

2. Same—*Former Case Modified.* The syllabus and corresponding portions of the opinion in the case of *State v. Hayes,* 59 Kan. 61, 51 Pac. 905, modified.

3. Same—*Evidence—Instructions.* Assignments of error relating to instructions and to sufficiency of the evidence to sustain the verdict, held to be without merit.

Appeal from Pratt district court; . George L. Hay, judge. Opinion filed June 12, 1926. Affirmed.

*D. E. McCrory,* of Pratt, and *F. L. Martin,* of Hutchinson, for the appellant.

*Charles B. Griffith,* attorney-general, *Roland Boynton,* assistant attorney-general, and *W. B. Hess,* county attorney, for the appellee.

The opinion of the court was delivered by

Burch, J.: Defendant, who was agent of the White Eagle Oil and Refining Company, was convicted of embezzlement of ·the company's funds, and appeals.

Defendant represented the company at its Coats station. He worked under an accounting system which made it impossible for misappropriation of money to escape ultimate detection. Gasoline, kerosene, oil and grease ˉwere delivered to him in measured and weighed quantities. Numbered sales tickets, whether for cash or credit, were made in triplicate, one for the customer, one for the company, and one for the agent's own records. Weekly reports were made in duplicate, one for the company and one for the agent's own records. The weekly report listed the sales tickets consecutively by number. Opposite each number was given the customer's name, the commodity sold, and the terms of sale, whether for cash or credit. The company's sales tickets were attached to the company's copy of the report when it· was sent in. Besides this, the

Criminal Law, 17 C. J. pp. 339 n. 64, 368 n. 5.  Embezzlement, 20 C. J. pp. 472 n. 51, 474 n. 55, 486 n. 60, 490 n. 89.  Indictments and Informations, 31 C. J. p. 722 n. 64.

agent made in duplicate a collection and remittance sheet, show-
ing credit ticket number, customer's name, amount collected, and
amount of cash received on cash sales tickets, as shown by the sales
report. From the total cash shown by the collection and remittance
sheet the agent took the amount of his expense vouchers, and sent
to the company a draft for the balance with the company's copy of
the sheet. By this means the company was enabled to keep an
account of credit sales to each customer, debiting him from the sales
tickets and weekly reports, and crediting him from the collection
and remittance sheets. When inevitable checking up occurred, the
books of the company showed the following customers owed the
following amounts:

| | |
|---|---|
| Miller | $515.98 |
| Hammond | 326.30 |
| Smith and Parish | 395.50 |
| Cater | 21.27 |
| Knacksteadt | 21.75 |

These customers in fact owed nothing. They had paid defendant
in full. Hammond produced his checks. These checks had been
deposited by defendant in the First National Bank, to the com-
pany's credit, and the company had received the deposit. The same
was true of other customers; but by manipulation of the accounting
system, defendant had held out $1,777.65 of the company's money,
and his inventory was short $485.48.

Defendant's shortages were fully proved. The state's evidence
was that lists of customers' tickets totaling $1,777.65 were presented
to defendant, and he admitted he had received the money and had
not accounted for it. His explanation was that he had expected to
receive an inheritance, and believed he would be able to make good
the deficit. At the trial, defendant as a witness in his own behalf
did his best to befog the issue by evasion, equivocation, and irrele-
vant responses to interrogatories. He kept insisting the money on
the Miller, Hammond, and other checks deposited in the bank, went
to the company, but he would not say he reported payment of the
accounts to the company. He would say he sent to the company
all the money he received, and then he would admit he did not send
in some items he received. Finally, he was given an opportunity to
point out, from his own records, report of collection of forty-seven
credit-sales tickets. He made search, found no mistakes or changes
in the records, and was obliged to confess failure to find report of

the collections. The bank records merely showed deposit of company money, not money received from Miller, Hammond, or the others, and withholding report of collection of their accounts was defendant's method of concealing from the company misappropriation of funds to the amount of funds which he received and did not report.

In checking up defendant's accounts, separate demands were made upon him for sums of money collected and not reported in amounts identified by the Miller, Hammond, and other accounts. Defendant's division manager testified as follows:

"Q. What amount was it that he . . . admitted that he had collected from Miller on this account and had not turned in to the company, the I. A. Miller account? A. $515.98 on that account.

"Q. What amount—what did you say to him when you asked him for the money? What did you say? A. I says, 'Shorty, you have collected this money. We want it. It belongs to the company. The company wants their money.'

"Q. What money did you refer to by this money? A. The total account of I. A. Miller.

"Q. How much was it? A. $515.98."

In the process of checking up, defendant claimed commissions were due him amounting to $370. He was told the company would probably arrange to apply the amount on some of the accounts for which he owed the company. When he checked out on January 9, 1925, he signed an acknowledgment of goods received amounting to $485.48, which was his stock shortage. His commissions in fact amounted to $407.73, and that sum was credited on the stock shortage.

The statute reads as follows:

"Any agent . . . of any corporation . . . who shall . . . convert to his own use, . . . without the assent of his employer, any money, bank bills, treasury notes, goods, rights in action, or valuable security or effects whatsoever, belonging to any such . . . corporation . . . which shall have come into his possession or under his care by virtue of such employment, . . . shall upon conviction thereof be punished in the manner prescribed by law for stealing property of the kind or value of the articles so embezzled, . . . or if any agent shall, with intent to defraud, neglect or refuse to deliver to his employer or employers, on demand, any money, bank bills, treasury notes, promissory notes, evidences of debt or other property which may or shall have come into his possession by virtue of such employment, office or trust, after deducting his reasonable or lawful fees, charges or commissions for his services, . . . he shall upon conviction thereof be punished in the manner provided in this section for unlawfully converting such money or other property to his own use." (R. S. 21-545.)

The information contained several counts, identical except as to amount of money embezzled. The third count on which defendant was convicted reads as follows, omitting the introductory portion:

"Miles R Eary, then and there being an agent, servant and employee of the White Eagle Oil and Refining Company, did then and there receive into his possession by virtue of such employment the sum of $515.98 belonging to the said White Eagle Oil and Refining Company, and on due demand being made therefor by the White Eagle Oil and Refining Company, the said Miles R. Eary did unlawfully and feloniously, with intent to defraud, neglect and refuse to deliver to his said employer on demand the said sum of $515.98, and did unlawfully and feloniously convert the same to his own use."

It will be observed the count charged embezzlement of a sum of money equal to the Miller account. Other counts charged embezzlement of sums of money equal to the accounts of Hammond, Smith and Parish, Carter and Knacksteadt. Defendant contends the information was defective because it did not negative assent of the company. Assent of the company was negatived by charge of unlawful and felonious conversion with intent to defraud. (*State v. Bauman,* 98 Kan. 757, 161 Pac. 591.) Defendant further contends the information was defective because it omitted "after deducting his reasonable or lawful fees, charges or commissions for his services."

In the case of *State v. Hayes,* 59 Kan. 61, 51 Pac. 905, the syllabus reads as follows:

"To charge embezzlement by an agent for failing or refusing to pay or deliver to his employer, on demand, money or property which comes into his possession by virtue of his employment, as defined in the latter part of section 88 of the crimes act, an averment of demand and refusal is essential; and, also, that the amount demanded is due, after deducting reasonable or lawful fees, charges or commissions for the services of the agent."

These statements were made in response to a challenge of the information by a motion to quash. In the present case no motion to quash was filed. The information does not show demand for a sum greater than was due after deducting commissions, or show that if commissions were deducted from the amount demanded there would be no liability; and receiving into possession, demand, refusal to pay, and felonious conversion with intent to defraud, having been directly charged, the information was not fatally defective. Defendant pleaded to the charge without objection. Apparently he did not regard the defect as tending to prejudice his substantial rights on the merits. (R. S. 62-1011.) The event of the trial demonstrated he suffered no prejudice to his substantial rights on ac-

count of the manner in which the offense was stated in the informa-
tion, and prejudice to substantial rights on the merits is the test of
sufficiency, whether the defect be one of form or substance. (*State
v. Powell,* 120 Kan. 772, 786, 245 Pac. 128.) The court had no dif-
ficulty in pronouncing judgment on conviction according to the
rights of the case (R. S. 62-1010), and on ,appeal this court must
give judgment without regard to defects which do not prejudice sub-
stantial rights (R. S. 62-1718). Furthermore, the information was
good, even as against a motion to quash.

The rule that exceptions contained in the clause of a statute
creating an offense must be negatived, was adopted by this court at
a very early day, from Archbold's Criminal Pleading and Evidence,
and regarded form rather than substance:

"The law on this point is plain and is well stated in Archbold's Criminal
Practice and Pleading, page 118, as follows: 'If there be any exception con-
tained in the same clause of the act which creates the offense, the indictment
must show negatively that the defendant or the subject of the indictment does
not arise within the exception. If, however, the exception or proviso be in a
subsequent clause or statute, or although in the same section, yet if it be not
incorporated with the enacting clause by any words of reference, it is in that
case matter of defense for the other party, and need not be negatived in the
pleading.' " (*State of Kansas v. Thompson,* 2 Kan. 432, 436 [1864].)

We now regard substance instead of form, and unless the excep-
tion, wherever found, inheres so integrally in the offense that liability
would necessarily be precluded unless the exception were expressly
negatived, it is a matter of defense. The statute covers cases of
embezzlement not involving fees or charges or commissions de-
ductible from the money received. In such cases, the clause "after
deducting his reasonable or lawful fees," or charges, or commissions,
has no place in the information, and would not be true if inserted.
Therefore the clause is not indispensable to an information; and
whether in any case the demand was for a sum which did not make
allowance for fees, is a matter of defense. The syllabus and the
corresponding portions of the opinion in the case of *State v. Hayes,*
59 Kan. 61, 51 Pac. 905, are modified to conform to these views.

Defendant was guilty of but one crime—failure to pay money
after demand for it—and the state was required to elect upon which
count it would rely for conviction. The county attorney made the
following election:

"The state elects to stand on the third count, covering the shortages of
Knacksteadt Brothers, $21.75; Smith & Parish, $395.50; I. A. Miller, $390.20
[$515.98]; J. E. Hammond, $326.30, and I. F. Cater, $21.27."

The amount $390.20 does not appear elsewhere in the record, has no relation to the Miller shortage or anything else in the case, did not change the proved amount of the Miller shortage, and is to be regarded as a stenographic error.

Defendant criticizes instructions given the jury that it was not necessary the demand should be for the correct and exact amount of money defendant was under obligation to pay, that it was essential defendant should have received into his possession the sum of $515.98, or some part thereof, and after due demand, neglected and refused to deliver the sum of $515.98, or some part thereof, after deducting from the amounts received by him his reasonable or lawful commissions. The instructions were correct, but if they were not so, they did not affect the result. Defendant was not prosecuted for failure to deliver to the company money received by him from Miller, or from Hammond, or from the others whose money defendant collected but did not report. He was prosecuted for failure to deliver to the company sums of money. Specific sums which had not been accounted for were identified by the customers' accounts. "The Miller shortage" and "the Miller account" were merely labels for $519.98. Demand was made for that sum. That sum was due over and above defendant's commissions. The jury found defendant embezzled $515.98, which he received by virtue of his employment, and which, with intent to defraud, he refused to deliver after due demand.

The verdict was amply sustained by the evidence, and the judgment of the district court is affirmed.

HARVEY, J. (dissenting): It is not, of course, a crime for an agent whose employment contemplates that he handle money of his principal, to have money of his principal in his possession. The holding or retaining by such an agent of money of his principal becomes a crime only under the circumstances stated in the statute creating the offense, hence it seems to me that the circumstances defined by the statute are material as constituting an offense and should be pleaded in the information. Conceding that defendant may waive the defect of this case in the information by not moving to quash it, or questioning it in any other manner, does not dispense with the necessity of proof of the offense as defined by the statute.

In this case the prosecution proceeded upon the theory that defendant had embezzled the money of his principal paid by the re-

spective customers, Miller, Hammond and others. The information was drawn in separate counts on that theory, each count setting forth the alleged embezzlement of the money collected from a specific customer. That erroneous theory was corrected by the election required by the prosecution during the trial; but the evidence proceeded upon the theory that the specific sums collected from the individual customers named were embezzled. The evidence disclosed that the sums collected from these specific customers were in fact deposited in the bank to the credit of defendant's principal, who actually received these specific funds, and this was admitted by the prosecution during the trial. The theory then turned on a question of inaccurate reporting, which was established; but the inaccurate reporting of funds collected may constitute an error in bookkeeping, but does not constitute embezzlement. The theory then advanced was that defendant had sold other merchandise for cash to the exact amount of the accounts of the specific customers, Miller, Hammond, and others, and had embezzled those funds, which were covered up by his method of reporting. I am unable to see any real proof of that in the record. It seems to rest more in a theory of the prosecution than in actual proof.