No. 28,072.

THE STATE OF KANSAS, *Appellee*, v. JOHN B. SANDERS, *Appellant*.

(274 Pac. 223.)

filed February 8, 1929.

*Charles E. Davis,* of Cottonwood Falls, and *Gilbert H. Frith,* of Emporia, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *S. R. Blackburn,* county attorney, *William C. Harris* and *Owen S. Samuel,* both of Emporia, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant, John B. Sanders, was convicted of embezzling certain assets of an estate of which he was administrator, and appeals, urging several errors, the first of which is that the evidence was not sufficient to prove the offense charged.

Briefly stated, that evidence was to this effect: For a number of years, including the time with which we are now concerned, Sanders was president of the Chase County National Bank. In April, 1921, one S. T. Slabaugh died testate, naming Sanders executor of his estate without bond. Among the assets which came into Sanders' hands by virtue of this executorship was a note for $40,000 secured by a Wabaunsee county ranch of 1,657 acres which Slabaugh had sold to two partners, Jones and Taylor, for $75,000. One of these partners, Jones, was wealthy, and Sanders offered him a discount of $800 if he would pay the note and mortgage, which had several years to run. Jones promptly accepted and paid Sanders $39,018 in cash, and the note and mortgage were canceled. Just what Sanders did with this money is not clear. It may be inferred from the evidence that he used the money to relieve the Chase County National Bank of certain illegal or improvident loans and to ease some of his own financial embarrassments. What is clear is that Sanders did not account to the probate court for the $39,018 nor disburse it as directed by Slabaugh's will, and that for a considerable time he

concealed from the heirs and beneficiaries of the estate the fact that he had cashed the $40,000 note, and pretended he had not done so; and when proceedings were begun to compel him to deliver to the administrator appointed to supersede him he turned over to his own attorney some apparently worthless papers, which were all he had to show for the money. The record reads:

"Q. Did I tell you that Mr. Sanders had started to Cottonwood Falls or Saffordville for the purpose of delivering them (notes and mortgages) to you, and that he got caught in a rainstorm at Emporia and that he left them with me and instructed me to turn them over to you?

[PEYTON, administrator]: "A. I don't remember that part of the conversation.

"Q. I did tell you I had the notes and mortgages and a check for a small balance of account in my safe, which I was ready to turn over to you in response to the demand you had made upon Mr. Sanders. A. I remember the notes; I don't remember the check deal.

"Q. What did you say to me, and I say to you? A. You said, 'Peyton, I have these notes here in my safe, and if you want them I'll get them for you; they ain't worth a damn to me.' I said, 'If they ain't worth a damn to you they ain't worth a damn to me'; so I never saw them."

Anent the foregoing counsel for defendant say:

"This is a most peculiar criminal action in the respect that there is practically no dispute as to the facts. . . . Defendant himself did not testify because he could not add to nor contradict in any manner of importance the evidence offered by the state. . . .

"As to what the defendant did with the money which came into his hands, we have only the evidence of the state. It is uncontradicted. . . .

"Query: Do those facts prove or tend to prove an embezzlement of the estate's funds by defendant?

"We say not. By making unauthorized loans of the estate's money, defendant was of course civilly liable for any loss that might occur. The loans were made at his peril and he would be compelled to make restitution if his judgment was bad. But the exercise of bad judgment, not tainted with any criminal act or intent, is not yet, in this state, cause for sending a man to the penitentiary."

Such a contention is surprising, to say the least. The idea that an executor of an estate may make ducks and drakes of its assets and incur no greater penalty than a mere civil liability therefor is something not yet set down in any law book with which this court is familiar. On the contrary, the statute declares:

". . . Any executor or administrator of any estate . . . who shall embezzle or convert to his own use, or who shall take, . . . with intent to convert to his own use, without the assent of his employer, any money . . . belonging to any estate . . . which shall have come into his possession

. . . by virtue of such trust, shall upon conviction . . . be punished as for stealing . . ." (R. S. 21-545.)

Interpreting this statute, it has repeatedly been held that any use of the funds of an estate or other trust fund by the custodian thereof in willful violation of his duties pertaining thereto, which prevents the fund from being immediately forthcoming on lawful demand therefor, constitutes embezzlement on the part of such custodian, and it is immaterial whether the custodian's relationship to the fund be that of executor, administrator, trustee, or other functionary. (*State v. Pratt,* 114 Kan. 660, 220 Pac. 505; *State v. Robinson,* 125 Kan. 365, 263 Pac. 1081; *Docking v. National Surety Co.,* 122 Kan. 235, 237, 238, 252 Pac. 201, and citations.) Defendant violated his duty as executor when he invested the $39,018 in those other notes or whatnot which he turned over to his attorney for delivery to Peyton, administrator, and it would have been none the less a violation of that duty if the notes had been good as gold instead of being as worthless as they were characterized in the record.

The criminal wrongdoing of Sanders was not confined to his making away with the proceeds of the Jones & Taylor note, but on that particular item the facts as conceded by his counsel, and neither disputed nor disputable, constituted a felonious embezzlement as defined by the crimes act.

Defendant assigns error on a ruling of the court given to the jury in the progress of the trial to disregard any evidence touching the character of certain notes which the defendant held or pretended to hold as assets of the Slabaugh estate in lieu of the $39,018 and other assets which had come into his hands as executor. This ruling was quite correct. It was of no consequence what the nature of those notes "not worth a damn" might be; and even if such evidence were competent and material, no error could be predicated on its rejection, since it was not brought forward as prescribed by the code in support of the motion for a new trial. (*State v. Ball,* 110 Kan. 428, 204 Pac. 701.)

Another error is based on the rejection of evidence tending to show certain efforts on the part of defendant to "adjust the matters in controversy" growing out of his misuse of the funds of the Slabaugh estate, and of "his offering to be personally responsible for such notes as might not be collectible." Such evidence would have been immaterial (*State v. Chaplain,* 101 Kan. 413, 417, 418, 166

Pac. 238) and in any event no error can be based thereon under the rule announced in *State v. Ball,* supra.

Error is also assigned on the overruling of defendant's motion to quash the five counts of the information. These counts had obviously been drawn to meet the exigencies of what the evidence might develop, and not with a deliberate purpose on the part of the state to bring the defendant to justice for the perpetration of five separate crimes, each carrying a separate punishment of penal servitude. Nobody but the defendant himself did or could know exactly what he had done with the assets of the Slabaugh estate. The several counts of the information were sufficient to apprise the defendant of the charges he would have to meet, and were sufficiently clear so that the court could have no trouble to determine what judgment and sentence to impose upon a verdict of guilty. When an information meets that test it is good against a motion to quash. (*State v. Hutzel,* 108 Kan. 456, 195 Pac. 887.)

It is also contended that the second count of the information did not charge any offense, and the case of *State v. Hubbard,* 58 Kan. 797, 51 Pac. 290, is cited. That was a rather technical decision of a divided court rendered over thirty years ago. The legislative mandate concerning technicalities in criminal appeals (R. S. 62-1718) is accorded much greater respect nowadays. See discussions in *State v. Peterson,* 102 Kan. 900, 171 Pac. 1153; *State v. Shoemaker,* 112 Kan. 805, 808, 809, 212 Pac. 890; *State v. Seidel,* 113 Kan. 390, 214 Pac. 565; *State v. Morris,* 124 Kan. 505, 260 Pac. 629.

It is finally urged that the trial court erred in its ruling on defendant's motion to require the state to elect upon which count it would rely for conviction. The court did rule that the state would have to elect to rely on counts one and two or on counts three, four and five. The state elected to rely on counts one and two and defendant excepted because the state was not required to elect between those two. That ruling was not erroneous. Construed strictly, counts one and two stated separate offenses and a verdict of guilty "as charged in the information" could be construed as a finding of guilty on both counts for which separate sentences might be imposed. (*State v. Ricksecker,* 73 Kan. 495, 85 Pac. 547.) However, that construction was not given to the verdict in this case. It read:

"We, the jury empaneled in the above entitled cause, do find the defendant J. B. Sanders guilty of the crime of embezzlement of the sum of $39,018⁰⁰⁄₁₀₀ all as in matter and form charged in the information."

In accordance with this verdict a sentence for a single offense was properly imposed.

In a reply brief defendant says:

"There is no doubt but that appellant was convicted because the jury accepted as evidence that which was a matter of common knowledge to the people of Chase county when the case was tried in 1927, namely, that some of the notes were then of questionable value, and no attention whatever was paid to their value in 1924. And in fact so far as the evidence was concerned, there was nothing offered to indicate or prove their value either in 1924 or in 1927, except the evidence of appellant, and he said he considered the notes good when he took them."

The outstanding fallacy in this argument is the defendant's assumption that he had a right to invest the proceeds of the $40,000 note in good notes, and that the notes he did'invest in were good at the time he did invest in them. The inception of his crime was in investing them in any sort of notes, good or bad, in breach of his duty as executor—which was to pay the debts of Slabaugh, if any, and distribute the balance to the named beneficiaries, and to account to the probate court for the assets of the Slabaugh estate as received by him, and to have those assets intact, less lawful disbursements, when called on to surrender them to the administrator appointed to succeed him.

Other matters argued in connection with the foregoing assignment of errors have not been overlooked, but they present nothing approaching the gravity of reversible error and need no discussion.

The judgment is affirmed.