No. 32,390

THE STATE OF KANSAS, *Appellee*, v. J. P. EVANS, *Appellant.*

(53 P. 2d 789)

Opinion filed January 25, 1936.

*P. L. Courtright,* of Independence, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

DAWSON, J.: J. P. Evans was convicted of embezzlement in the district court of Montgomery county.

He brings his case here for review upon an abstract based on a partial transcript of the record. The state interposes no objection and has filed no brief.

From this incomplete record and the abstract and brief submitted by defendant we glean the material facts to be as follows:

William A. Mitchell, who had been a soldier, died on May 18, 1921. He was survived by his widow, Goldie Mitchell, and by his mother, Elizabeth Mitchell. During the years in which the mother survived her son she drew payments of money from the government on account of his war-risk insurance.

The mother died in May, 1930, at which time there was a balance of $7,820 still due on account of the deceased soldier's war-risk in-

surance. To collect that insurance in conformity with pertinent government requirements his widow was appointed administratrix of his estate by the Montgomery county probate court. She had remarried in the meantime, and she qualified as administratrix bearing the name of Goldie Mitchell Garr.

So far as appears, about the only duty to be performed by the administratrix was to satisfy the government regulations so that this considerable sum of insurance money would be paid to her. Apparently she was the sole heir of the deceased Mitchell.

The administratrix employed the defendant to collect the money due from the government. This he did without delay. Thereafter from time to time defendant paid to the administratrix certain sums of money, $200 in May, 1931; $100 in December, 1931, and at other times various sums which may have amounted to another $100. He paid $832 in her behalf as the purchase price of an automobile. He also paid $700 to one Ada Ingram to settle some baseless claim she had lodged against the William A. Mitchell estate. Defendant also, on cross-examination of the administratrix, elicited some evidence that he had incurred expenses in the performance of attorney's services for the administratrix which may have amounted to $200 or $300, and that the cost of her official bond was $76. For his services as attorney he was allowed a fee of $782, being 10 percent of the sum he collected from the government.

Defendant resided at Ulysses. The administratrix resided first one place and then another, at Garden City, at Manter, and at Gravett, Ark. She was a woman of very little education, having only attained to the sixth grade of the common school. At defendant's request she signed whatever papers he presented to her—power of attorney, endorsements of certificates of deposit, and other instruments. A considerable part of the money collected from the government was deposited for a time in certain Topeka banks. The record intimates this was done at the insistence of the bonding company which was surety on the bond of the administratrix.

In the summer of 1932, the administratrix called on defendant at Ulysses for the purpose of getting him "to tell and itemize what [he] had done with that money"—meaning the money he had collected from the government and which belonged to the estate for which she was administratrix. She stayed at defendant's residence for some time. Defendant told her he had deposited the money in various banks where she could not find it—apparently on some

claim or pretense of some undetermined amount still due him for attorney's services.

At length the administratrix complained to the probate court. That tribunal made efforts to induce defendant to appear and account for the moneys he held as attorney for the administratrix. Not until a citation was issued did he appear. By that time the administratrix had employed a reputable firm of attorneys who, on her behalf, made formal demand upon him for $2,300, which sum, according to some calculation, defendant was withholding of the moneys of the administratrix. He did not comply, and admitted he could not comply with the demand, giving the poor excuse that he had loaned the money to his sister in California. He told the same story to the probate judge. The record reads:

". . . If the court please, and gentlemen, I beg of you to give me the same sporting chance that you would if you were going to shoot a jack rabbit. . . . I admit I have the money, but I have let my sister have it, and I can't get it at this time, and if you insist on my producing the money today I will have to go to jail, because I can't do it, and I want some other time."

This formal demand upon defendant and his statement of his inability to pay over the money occurred in the office of the probate court of Montgomery county on November 22, 1932.

The warrant for defendant's arrest on the charge of embezzlement was issued and served on August 30, 1934.

Jury trial; verdict of guilty; sentence under the statute; appeal.

Defendant urges various objections to the judgment. He contends that his crime was not committed in Montgomery county; that the money never was in that county; and that the state's evidence showed that the crime was committed in Grant county at the time he refused to account for the money on demand of the administratrix in the summer of 1932, which would be more than two years prior to the inception of this prosecution and therefore barred by the statute of limitations.

It is the law that the crime of embezzlement is committed when one who is entrusted with the money or property of another fails to have it forthcoming on the lawful demand of the person to whom it belongs. This is a rule of necessity. The state could never show at what particular instant of time or in what particular locality any wrongdoer conceived and put into execution his wicked design of appropriating to his own use the money or property entrusted to his keeping.

In *State v. Sanders*, 127 Kan. 481, 484, 274 Pac. 223, it was said:

". . . It has repeatedly been held that any use of the funds of an estate or .other trust fund by the custodian thereof in willful. violation of his duties pertaining thereto, which prevents the fund from being immediately forthcoming on lawful demand therefor, constitutes embezzlement on the part of such custodian, and it is immaterial whether the custodian's relationship to the fund be that of executor, administrator, trustee, or other functionary. (*State v. Pratt*, 114 Kan. 660, 220 Pac. 505; *State v. Robinson*, 125 Kan. 365, 263 Pac. 1081; *Docking v. National Surety Co.*, 122 Kan. 235, 237, 238, 252 Pac. 201, and citations.)"

The demand for the money was made in Montgomery county; defendant's failure to have it forthcoming on that demand occurred in that county, and the venue was properly laid in that county.

In the cross-examination of the prosecuting witness, defendant sought to formulate his questions so as to elicit answers which would show that his offense was committed in Grant county more than two years before his arrest and prosecution in Montgomery county. The transcript reads:

"Q. What time in July did you come down there? [to Grant county] A. I don't remember just what date.

"Q. What did you come for, if you remember? A. We went down there to try to get you to tell and itemize what you had done with that money.

. . . . . . . . . . . . . .

"Q. That was along after June, about the first week in July, wasn't it? A. It was up in July.

. . . . . . . . . . . . . .

"Q. Mrs. Garr, did I understand you correctly that you came up there specially to make me settle up and not to harvest? A. Yes, sir.

. . . . . . . . . . . . . .

"Q. Did you then make a demand on me for the money, as you testified to the jury a while ago; or did you not?

[COUNSEL FOR THE STATE]: "Object to that as assuming a proposition not in evidence. .

"THE COURT: Objection sustained. You are assuming that what she said was a demand; she never said at any time that she went up there and demanded the money; you are assuming that some of the things she said was a demand. '

. . . . . . . . . . . . . .

"Q. Tell the court and jury what I said about paying back this $2,300, or any part of it at that time, or that request of yours, or demand or whatever you want to call it that I pay it back, what did I say, if you remember? A. I don't remember just the exact words, but you told me you had it scattered so they could not find it, I tried to get you to tell me where it was at, and you would not tell me.

"Q. Did I also tell you I would pay it back when a court of competent

jurisdiction told me to and not before? A. You told me whenever the court ordered you to pay it over you would pay it."

This testimony did not show an unqualified demand for the money nor an unqualified refusal to pay it over, so as to establish the commission of the offense of embezzlement in Grant county, nor to start the running of the statute of limitations.

Another contention of defendant is that the money never was in Montgomery county. But an administratrix is an officer of court, and an attorney is an officer of court. The money was an asset of the estate of Mitchell, deceased. That estate was being administered in the probate court of Montgomery county. Constructively the money was *in custodia legis* of the Montgomery county probate court. Only by authority of that court did the administratrix and her counsel, this defendant, get their hands on it. Moreover, the place where defendant got his hands on the money was not the vital matter in this lawsuit, although it was charged in the information that it occurred in Montgomery county. The gist of the offense was his failure to produce the money on lawful demand, and that criminal delinquency occurred in Montgomery county.

Defendant's next argument is based on the assumption that the sum embezzled was not established, because the $2,300 included his "reasonable and lawful fees, charged and undetermined commissions." This point is devoid of merit. There was no evidence— at least none in the partial record submitted for our review—that there were any lawful fees and charges deductible from the $2,300. An unfaithful attorney is not entitled to any compensation whatever, and this record, incomplete as it is, clearly reveals defendant's criminal breach of professional fidelity to his client's interest.

Defendant next propounds the question: "Can this defect be cured by a jury verdict that the defendant did embezzle over $20?" This question requires an affirmative answer. The state's contention was that the sum withheld by Evans was $4,780, but whether that sum was established by the evidence is not clear. What is clear is that at least defendant was a defaulter to the extent of $2,300. Indeed, he repeatedly admitted it, as in his plea to the probate court for time and leniency, "for a jack rabbit's chance," as quoted above. Furthermore, so long as the sum embezzled was in excess of $20, and that fact neither was nor could be denied, it made no difference in the grade of the felony committed. (R. S. 21-545; 21-533.)

Defendant projects some other questions—whether he had a contract of employment with the prosecutrix, whether it was a contract with which the probate court was concerned, whether he was an attorney for the estate of Mitchell, whether he could look to the estate for his fee, whether the amount of his fee was determinable by the probate court. In our opinion these questions are merely camouflage to obscure the real issue. Not one of them was of the slightest consequence in this prosecution nor in this appeal. Defendant was in possession of a large sum of money belonging to the administratrix of the Mitchell estate. That sum was not forthcoming on lawful demand made in her behalf. Defendant's criminal delinquency thereupon became complete and his criminal responsibility therefor became unescapable.

No semblance of error appears, and the judgment is affirmed.