No. 32,624

THE STATE OF KANSAS, *Appellee*, v. MARY MOROZZO, *Appellant*.

(58 P. 2d 1114)

 Opinion
filed July 3, 1936. 

*A. B. Keller, George R. Malcolm* and *C. A. Burnett,* all of Pittsburg, for the appellant.

*Clarence V. Beck,* attorney general, *E. V. Bruce,* county attorney, and *Ben L. Humphries,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Mary Morozzo was convicted of feloniously setting fire to her own property—a combination house and store building in Frontenac, with intent to defraud the insurers thereof.

She appeals, presenting thirteen specifications of error, the gist of which is that the evidence was insufficient to sustain the verdict; and that the trial court erred in giving and refusing instructions.

The evidence tended to show that defendant owned a well-made, 7-room, one-story house in Frontenac, built in 1932. She and her two minor children, a son and a daughter, resided in the property. The east front room, about 28 feet by 12 feet, was used for a grocery business conducted by defendant.

The house was insured for $2,200; the household furniture for $1,200; the grocery stock for $500, and the storeroom fixtures for $500—a total insurance on the property, real and personal, of $4,400.

The premises had cost considerably more than the insurance carried, but for some time before it was set on fire the business which defendant conducted had been falling off; her gasoline sales had completely ceased; she had lost her husband since the property was built and had been subjected to a criminal prosecution for his murder; and she had been repeatedly subjected to arrests by the local and federal authorities for violations of the liquor laws and had paid fines therefor.

On July 7, 1934, defendant permitted a friend, Pete Dorchy, to take her 13-year-old daughter to a picture show in Pittsburg, four miles away. Another girl of the same age went along. Dorchy let the girls out of his car at the show and arranged to call for them there. Defendant's son was not at home that evening. Dorchy returned to defendant's house about 8 or 8:30 p. m. He and defendant visited there until nearly 9 o'clock, when he left to return to Pittsburg for the young girls. Defendant then served three cus-

tomers, and when they left she locked the front door and left the premises by the back door and walked across her back alley to the home of a neighbor, John Chetan, who was having a party that night. She took a seat at Chetan's where she could keep an eye on her own premises if any customer should appear. After a while she said she heard her dog bark and stepped over to her house, but did not go in. She said she saw two men thereabout who she supposed were calling on Joe Falletti, sometimes named "Jap," who lived in some sort of shack in defendant's back yard. After this visit to her premises she returned to Chetan's; later she suggested to Falletti that they return to see if any people were about. She and Falletti walked around her premises. Falletti testified that he remarked to defendant at the time that he smelled smoke. They did not go inside, but returned to Chetan's where they remained until 11 o'clock or 11:30 p. m. Then at defendant's suggestion she and Falletti went to her home. He walked around the house and said to defendant, "I smell smoke; I smell more strong." Then, according to defendant's testimony, they went inside the house, which was filled with smoke. She told Falletti to go to a neighbor's and telephone the fire department. It shortly arrived. The fire chief and an assistant broke in the front door. The fire chief groped his way through the storeroom into the kitchen, where he found defendant and asked her where the scuttle hole, or entryway into the attic was. She said there was none; this was not true, but she may have misunderstood him. He went outside, mounted to the roof and chopped a hole in it. He found the attic filled with smoke, and two large piles of papers which had burned into charred remnants without setting fire to the house. Meantime, one of his assistants had discovered that a fire had been set in the storeroom. Near one of the counters some sacks were burning and these had set fire to the floor. Surrounded by the sacks was a keg partly filled with gasoline, which the fireman seized and handed out to another person, thinking it was whisky. Next morning the charred remains of the papers in the attic had disappeared.

The foregoing is a fair summary of the testimony as it appears in the lengthy abstract and short counter abstract. Was it sufficient to take the case to the jury? Counsel for appellant insists that it was not—that it showed no motive on the part of the defendant for the commission of this crime; that the state's witnesses contradicted each other; and that the attendant circumstances showed

that defendant did not set the fires which so nearly demolished her property.

In our opinion, this line of argument exhausted its force when it failed to raise in the minds of the jurors a reasonable doubt of defendant's guilt. The incendiary character of the two fires, in the storeroom and in the attic, to which no one but defendant herself had access on the evening of July 7, 1934, and the attendant circumstances, constituted incriminating evidence against defendant whose probative force was quite sufficient not only to permit but to require that the case should go to the jury. It is quite beside the point that the state also arrested Dorchy and Falletti as possible participants in this crime, but later, for want of sufficient evidence, or being convinced of their innocence, dismissed the proceedings against them.

Error is urged because the trial court refused to give certain instructions, particularly the usual admonitory one that if any juror should entertain a reasonable doubt of defendant's guilt, or a reasonable doubt as to whether she was present at the time and place when her premises were set on fire, the jury could not find defendant guilty. Counsel for defendant rely on the rule announced in our early case of *State v. Witt*, 34 Kan. 488, 8 Pac. 769, where it was held in a murder case that the refusal of the trial court to give an instruction of that general tenor was prejudicial error. Whether under this court's present conceptions of the mandate of the criminal code, R. S. 62-1718, that 51-year-old precedent, standing alone and without some showing that the general verdict was not, in fact, the verdict of each individual juror, would now be followed we need not stop to inquire. But see *State v. Fleeman*, 102 Kan. 670, 677, 171 Pac. 618; and *State v. Sanders*, 127 Kan. 481, 485, 274 Pac. 223, and citations. In this case, after the verdict of guilty was returned, the record recites:

"Thereupon the attorneys for the defendant requested the court to poll the jury and the court inquired of each juror separately if that was his verdict and each juror upon being asked said question answered 'yes.'"

The recital just quoted demonstrates incontrovertibly that the omission of the requested instruction did the defendant no harm.

Defendant also complains of an instruction given by the court which told the jury of the probative value of circumstantial evidence, and in which it was stated that "the state relies to some extent for conviction on circumstantial evidence." The objection now

made is that the state "in fact and in truth was relying entirely on circumstantial evidence." We are not prepared to concede that this view of *all* the evidence was correct, or that the instruction would have been *prejudicially* erroneous if such were the fact.

Error is also assigned on an instruction in which it was stated that the evidence which had been introduced touching former charges and convictions of the defendant could only be considered as affecting her credibility as a witness. The criticism now leveled at this instruction is that it told the jury that the evidence which had been introduced showed former conviction of defendant and that no such evidence had been offered. What is perfectly clear is that defendant herself testified of her repeated arrests and of her payment of fines. Whether such payments were upon pleas of guilty or upon verdicts of guilty, the instruction was quite fair to the defendant and well within the general scope of the evidence.

Other criticisms of the instructions given and refused have been carefully considered but we discern nothing in any of them to justify further discussion.

The judgment is affirmed.