No. 33,552

THE STATE OF KANSAS, *Appellee,* v. CARL PERRY, *Appellant.*

(76 P. 2d 818)

Opinion filed
March 5, 1938.

*George D. Miner,* of Ellsworth, for the appellant.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Paul L. Aylward,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: The defendant was convicted of embezzlement, and appeals.

He contends that the crime charged was not proved, and in any event the statute of limitations had run before the prosecution was begun.

The state's evidence tended to prove that in 1934 one Minnie Schrader, an elderly widow, resided in Ellsworth with her two daughters, Alma Schrader and Elsie Libby. In May of that year Mrs. Schrader, acting through her daughter Alma, loaned defendant 60 shares of United Telephone and Electric Company stock. It was agreed that he would pay interest on the stock at the same rate as the dividend income thereon, and return the stock when Mrs. Schrader wanted it.

In August, 1934, defendant obtained from Mrs. Schrader 60 shares of United Telephone Company stock which he was to exchange for 5-year government bonds, and shortly thereafter she executed a power of attorney in blank, authorizing their sale and transfer on the books of the company.

In September, 1934, defendant induced Mrs. Schrader to execute an instrument which read:

"DEFENDANT'S EXHIBIT ONE.

"We this day confirm receipt of you      Sept. 6th, 1934.
"Quantity—

"Received of Carl Perry $6,000.00 cash in hand 'United States Currency,' which is payment in full for sixty (60) shares United Telephone Company 7% preferred stock and sixty (60) shares United Telephone & Electric 7% preferred stock.                    MRS. MINNIE SCHRADER,

"Witness: ELSIE LIBBY.                          By ALMA SCHRADER."

There was not the slightest basis of fact to warrant the recitals stated in the instrument just quoted; and it was clear that Mrs. Schrader and her daughters did not understand its purport. In October, 1934, defendant paid the dividend income on the United Telephone and Electric Company stock to Mrs. Schrader and borrowed it for another six months' period.

In December, 1934, defendant called on Mrs. Schrader and showed her some 20-year government bonds which he said had been sent to him by mistake, but that he would return them and get the 5-year bonds Mrs. Schrader desired. He also told her that her telephone stock was in Chicago but he could get it at any time.

In July, 1935, defendant promised to call at Mrs. Schrader's home in response to her demand for a return of the stock, but he failed to do so until August, at which time he confessed that he had sold her stocks but did not have the proceeds, and that all he could do was to give her some sort of acknowledgment of his obligation to her. What he did do was to give her his promissory note for $6,000, payable in six months, with six percent interest. Payments aggregating $780 were made on this note, apparently out of dividends; and on February 15, 1936, defendant gave her another note for $5,220 payable in six months with six percent interest. On the latter note he made three payments totaling $450.

On November 4 [or 12], 1936, a warrant was issued charging defendant with obtaining Mrs. Schrader's stocks by false pretenses, with intent to cheat and defraud her of them. His arrest followed on November 20, and he was given a preliminary hearing before a justice of the peace; and on the evidence developed thereat, defendant was bound over to the district court on a finding that various crimes of embezzlement had been committed, and that he was probably the guilty party.

Next followed the filing of an information against defendant, on April 26, 1937, charging him in three counts with the crime of embezzlement (two of which were later dismissed), and shortly

thereafter the cause was tried before a jury which returned a verdict of guilty, and defendant was sentenced to a term of penal servitude therefor.

Touching the question whether the evidence supported the charge of embezzlement, it cannot be gainsaid that the dealings of defendant with that 77-year-old woman and her unsophisticated daughters were susceptible of the interpretation that defendant embezzled the stocks entrusted to him; and the evidence—at least that part of it which the jury chose to believe—tended to show that until August, 1935, defendant pursued a course which tended to conceal from Mrs. Schrader the fact that he had converted the proceeds of her stocks to his own use (*In re Perry*, 145 Kan. 212, 64 P. 2d 578); so whether the prosecution may be deemed to have been begun on December 31, 1936, when defendant's preliminary examination was held, or on April 26, 1937, when the formal information charging him with embezzlement was filed, the prosecution was begun in time. (G. S. 1935, 62-503, 62-504; *State v. Wingett,* 136 Kan. 436, 16 P. 2d 486.)

In *State v. Evans,* 143 Kan. 29, 31, 53 P. 2d 789, it was said:

"It is the law that the crime of embezzlement is committed when one who is entrusted with the money or property of another fails to have it forthcoming on the lawful demand of the person to whom it belongs. This is a rule of necessity. The state could never show at what particular instant of time or in what particular locality any wrongdoer conceived and put into execution his wicked design of appropriating to his own use the money or property entrusted to his keeping."

See, also, *State v. Sanders,* 127 Kan. 481, 484, 274 Pac. 223.

We note, of course, that defendant had some talking points to urge before a jury, to the effect that Mrs. Schrader had acquiesced in his appropriation of her bonds to his own use by executing defendant's exhibit one, on September 6, 1934, and by accepting his note for $6,000 dated August 7, 1935, and payments thereon, and by accepting defendant's renewal note dated February 15, 1936, for the ostensible balance then due. But the jury saw through that camouflage, and their interpretation of the facts will have to stand.

The judgment is affirmed.