No. 35,584

THE STATE OF KANSAS, Appellee, v. ETHEL YARBERRY, Appellant.

(138 P. 2d 444)

Opinion filed June 12, 1943.

W. L. Cunningham, of Arkansas City, argued the cause, and E. J. Taggart, of Wellington, D. Arthur Walker and Wm. E. Cunningham, both of Arkansas City, were on the briefs for the appellant.

John A. Potucek, of Wellington, and Robert H. Cobean, county attorney,

argued the cause, and *A. B. Mitchell,* attorney general, was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: In this action the defendant was convicted of forgery on three counts and embezzlement on six counts. She appeals.

The defendant was a bookkeeper for the Hatcher Clinic, the Hatcher Hospital Association and for Doctor Hatcher's personal accounts. These parties each had an account, and all operated through the same office. The offenses with which she is charged all involve transactions that had to do with her work in that office. In addition to her other duties she received and accounted for money paid to her for either the clinic, the doctor or the association.

She argues first that her motion to quash the information should have been sustained. In the consideration of this argument we shall first refer to the three forgery counts. Since these counts were stated in practically identical language except for the amounts and dates and in one instance as to certain initials just one of the counts will be set out. It is as follows:

"In the County of Sumner and State of Kansas, one Ethel Yarberry did then and there, unlawfully, feloniously, forge, counterfeit and falsely make one certain check in the amount of (giving the number of dollars; one $30, one $55 and one $35), drawn on the First National Bank in Wellington, Kansas, a banking corporation, etc., which said forged and falsely made check is in words and figures as follows, to wit: (here the check was copied.)"

The checks were all signed "A. R. Hatcher by E. Dy." Two of them bore the initials "A. R. H." in writing and one bore the initials "K. E. V." One bore the notation on the lefthand side near the top "Mid West Hosp. Ass'n." The other two bore the word "salary" at the same place. The dates were "February 7, 1940, 4-15-1940, August 25, 1940."

At the outset of the case the defendant asked that the state be required to file a bill of particulars showing therein in what respect the three instruments were forgeries and that the state set out whether the name and initials "A. R. Hatcher" or the initials "A. R. H." or "K. E. V." were forged. This motion was overruled. Following the overruling of the motion for a bill of particulars the defendant filed a motion to quash the information. As to these three counts, she argues that it took evidence outside of the check itself to show which one of these writings was charged to be a forgery and hence the information itself was not sufficient to enable her to

tell against what charge she must be prepared to make a defense. It was conceded by all parties to this action that defendant was authorized at all times to draw checks on the various accounts of which she was in charge and that the approved method of doing that was to sign the name of A. R. Hatcher by E. Dy. and that the check was validated by the initials of Doctor Hatcher being written by Doctor Hatcher himself, or those of another doctor whose initials were K. E. V. by that doctor himself. It is clear that she understood when this information was filed that the forgery she was charged with was the writing of the initials of the doctors which caused this check to be valid at the bank. Under such circumstances it would not do for us to say that this information with a copy of the check attached would not sufficiently advise her of the forgery which the state intended to prove that she committed.

As to the embezzlement counts, the information charged embezzlement as follows:

"At and within Sumner County, Kansas, one Ethel Yarberry, being over the age of sixteen years and while employed as bookkeeper for the Hatcher Clinic and the Hatcher Hospital Association, a corporation, existing under and by virtue of the laws of the State of Kansas, did, as such bookkeeper, collect and receive from (naming a certain person and a certain sum of money as received or a check from a certain person of certain value) said amount having been paid and delivered by said (person) in payment of an account due Dr. A. R. Hatcher and the Hatcher Clinic; the said sum aforesaid (or said checks) being the property of Dr. A. R. Hatcher and the Hatcher Clinic and said A. R. Hatcher and the Hatcher Clinic being entitled to the possession, the use of, and to all the benefits arising therefrom, and the said Ethel Yarberry, notwithstanding that said Dr. A. R. Hatcher and the Hatcher Clinic were entitled to the said possession, use of and all benefits arising therefrom, did then and there unlawfully, willfully, feloniously, and intentionally, take, embezzle and convert to her own use, without the consent of her employers, said sum and the amount aforesaid, good and lawful money of the United States and of the value of, etc. (or in the case of a check), the amount of (so many dollars and cents) proceeds of the check aforesaid, good and lawful money of the United States, of the value of (a certain amount) and the personal property of Dr. A. R. Hatcher and the Hatcher Clinic."

The statute under which these prosecutions were brought was G. S. 1935, 21-545. It provides, in substance, as follows: That any agent, employee or clerk of any private person, copartnership, or corporation, who shall embezzle or convert to his own use, without assent of his employer, any money, rights in action, or valuable security or effects whatsoever, belonging to any such person, copartnership or corporation, which shall have come into his possession or

under his care by virtue of such employment, shall, upon conviction thereof, be punished in the manner prescribed by law for stealing property of the kind or value of the articles so embezzled.

The appellant argues that this count did not charge that the money or checks, the proceeds of which she was charged with embezzling, came into her possession by virtue of her being bookkeeper.

The count charged that while she was employed as bookkeeper she received a certain sum of money from a certain person in payment of an account due her employers; that it was the property of her employers and that she converted it to her own use without the consent of her employers. We do not have any difficulty in finding that the defendant knew when this information was read to her that she was being charged with embezzling money that came into her possession as bookkeeper. (See *State v. Howland,* 100 Kan. 181, 163 Pac. 1071, *State v. Robinson,* 125 Kan. 365, 263 Pac. 1081 and *State v. Sanders,* 127 Kan. 481, 274 Pac. 223.) We hold, therefore, that the motion of the defendant to quash the information was properly overruled.

The defendant next argues that the court erred in admitting over objection of defendant, incompetent, irrelevant, and immaterial testimony, hearsay testimony and opinion and conclusions of witnesses for the state. This objection is aimed at testimony of an auditor who audited the books being kept by the defendant and who testified for the state. The first bit of evidence about which defendant complains is that this auditor was permitted to testify as to a shortage for 1940 in the three accounts which defendant was keeping. Defendant argues that there was no testimony to show that the defendant was responsible for this shortage. This is hardly a correct statement of the record. There was some evidence to show that defendant was responsible for several thousand dollars' shortage in the several accounts. While she was not charged with the embezzlement in a lump sum designated as a shortage, the charges were as to a specific item, yet this shortage in the various accounts was a part of the general situation and concerning which the state was entitled to introduce evidence.

Defendant next complains about the court admitting testimony as to what is known as the Heskett check. In the information defendant was charged with embezzling $42.90 which she received from one Maybelle Heskett in the form of a check. The basis of the argu-

ment of defendant with reference to this check is that after the evidence of the state showed that the Heskett check had been deposited in the bank to the credit of the Clinic, and that the deposit sheet showed that it was included in the deposits made, the auditor was permitted to testify that it did not show on another record kept by defendant, known as a bank analysis, and that on that account it was apparent that there must have been an amount equal to the Heskett check taken out of the proceeds in cash. The witness was asked this question, "And had it (the Heskett check) been listed, the bank deposit and funds of the Hatcher Clinic would have been increased to that extent?" The defendant argues that to permit this question to be asked and answered was to invade the province of the jury. The witness answered: "This total would have been increased $42.90." It is true that after the circumstances were shown to the jury the jury could have drawn a conclusion that where the Heskett check was marked on the deposit slip in the bank and yet was not marked on the list that was made then there had been an amount equal to the amount of the Heskett check taken out of the cash. Still it was not improper for the court to permit the witness to interpret these records for the benefit of the jury. (See *State v. Gore*, 152 Kan. 551, 106 P. 2d 704.)

Defendant next argues that the court erred in overruling the defendant's motion for a directed verdict on each count made at the close of the evidence for the state. In this connection the defendant first directs her argument to counts 5 and 6 of the information. One of these counts charges that the defendant embezzed the amount of a check known as the "Maybelle Heskett" check and the other the "Mary Scroggins" check. The circumstances of the Mary Scroggins check were about the same as those of the Maybelle Heskett check, to which reference has heretofore been made and the same statement applies. There was ample evidence to warrant the court in submitting the matter of whether the discrepancy in the bookkeeping records and the bank analysis, together with other circumstances, were sufficient to show that defendant embezzled the amount of these checks. When she testified on cross-examination she testified as to two different explanations of this discrepancy, both of which were proven to be untenable by further cross-examination. The state sought to prove her guilt on these two counts, by showing a manipulation of the various accounts which she was charged with keeping. This is a method of proof upon which this court has put its approval. (See *State v. Eary*, 121 Kan. 339, 246 Pac. 989.)

The same observation may be made in answer to the next argument of defendant that the court erred in overruling defendant's motion for a directed verdict on each count made at the close of the evidence for the state. Defendant in this connection lays considerable stress upon the fact there was some evidence that other people besides defendant had access to the box in which the money was kept. That argument goes more to the weight of the evidence than its admissibility or as to whether it constituted any evidence of the guilt of the defendant. No doubt the jury considered this in connection with the evidence of the irregularities in the bookkeeping and the records kept by defendant and statements made by her.

Defendant next argues that the court erred in refusing to give certain instructions to the jury. The first argument in this connection is that the information on the embezzlement counts charged that the defendant did the acts with which she was charged while employed as a "bookkeeper" of the Hatcher Clinic or Hatcher Hospital or Doctor Hatcher and that the court in its instruction erroneously enlarged the charge to be while bookkeeper for Dr. A. R. Hatcher, The Hatcher Hospital Association or The Hatcher Clinic. It is hard to see how the defendant could be prejudiced by this discrepancy, especially in view of the fact that the count later on charged that the account was due Dr. A. R. Hatcher and The Hatcher Clinic and The Hatcher Hospital Association. The jury was not misled.

Defendant next argues that instruction 17 stated that the capacity in which defendant was charged with having funds in her possession is enlarged to that of cashier. The instruction said "bookkeeper and cashier" while the information itself said just "bookkeeper." This did not prejudice the defendant.

The defendant argues next that the court erred in giving instruction 23, but we take it she meant instruction 28 because the argument she makes applies to that instruction. This instruction has to do with the confession that the defendant was alleged to have made. Defendant argues that the instruction omitted to mention the element of disorder of mental condition at the time the statement was signed and that defendant did not realize that she confessed to committing such an offense. It would have been proper for the court to have included such language in the instruction, but as a matter of fact the instruction said that it must be shown by evidence that the confession was freely and voluntarily made and was

not induced by threats, coercion or by persuasion or by promise of immunity or any other improper influence, or if the jury have a reasonable doubt as to whether such alleged admissions and confessions were freely and voluntarily made then they should wholly disregard it and acquit defendant unless the jury believed beyond a reasonable doubt the defendant's guilt of the offenses charged in the information had been established. There was no testimony by the defendant herself that she did not realize what she was signing. She said she was in such a state of mind that she would probably have signed any paper that would have been presented to her. The instruction is sufficiently comprehensive, we think, to cover that situation.

Defendant next argues that the court erred in refusing to give an instruction requested by defendant that mere proof of the receipt of funds and failure to account for those funds did not in itself show embezzlement by an agent or servant. The record in this case does not disclose that such an instruction would have been proper. There was such evidence in this case so that it could hardly be said that this was a case where the state was asking for a conviction upon such evidence alone.

Defendant next argues that the court erred in refusing to instruct the jury that it would not be warranted in finding the defendant guilty of embezzlement if the evidence showed her guilty of larceny. We do not find any evidence in this record that would warrant the giving of such an instruction.

Defendant next argues that the court erred in refusing the defendant's request to instruct the jury that the defendant in the embezzlement counts was charged with converting the money to her own use and not to the use of anyone else. There is some evidence here that defendant admitted she took this money for the benefit of her husband but before she handed it to her husband she had it herself and it was certainly taken from her employers for her own use if the jury believed the state's evidence.

The judgment of the trial court is affirmed.